IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM JAY CUOZZO,** | ) | |
| Plaintiff, | ) | **Case No. 7:21-cv-00501** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **C.F. WARRING, et al.,** | ) | **Chief United States District Judge** |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff William Jay Cuozzo, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against C.F. Warring, H.R. Sims, Barry L. Kanode, and Carl A. Manis, seeking to recover monetary damages for alleged violations of his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The defendants have filed a partial motion to dismiss to which Cuozzo has responded. ECF Nos. 20 and 31. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I.     Background

Cuozzo is incarcerated at Green Rock Correctional Center ("GRCC") in Chatham, Virginia, where the events giving rise to this action allegedly occurred. See Am. Compl., ECF No. 16, at 2.[1] At all times relevant to his claims, C.F. Warring was the Institutional Investigator at GRCC, H.R. Sims was a Disciplinary Hearing Officer, Kanode was the Warden of GRCC,

---

[1] The page numbers in the court's citations to the complaint and attached exhibits refer to those assigned by the CM/ECF system.

and Manis was a Regional Administrator for the Virginia Department of Corrections ("VDOC"). Id. at 1.

Cuozzo's claims primarily stem from disciplinary proceedings instituted against him for allegedly attempting to have suboxone mailed to himself and other inmates at GRCC. On April 1, 2021, Warring submitted four disciplinary offense reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband. Id. at 6–7; see also Am. Compl. Exs. 11, 13, 26 & 30, ECF No. 16 at 51, 53, 81 & 87. Warring reported that packages containing suboxone had been intercepted in the mailroom on four occasions between November 16, 2020, and December 10, 2020. Am. Compl. Exs. 11, 13, 26 & 30. Three of the packages were addressed to other inmates, and the fourth package, which purportedly contained "legal mail," was addressed to Cuozzo. Id.

Cuozzo claims that the charges were false and retaliatory, that he was convicted of two of the charges without receiving due process, and that he was treated differently than other inmates who were charged with the same offenses. Am. Compl. at 7–32. He alleges that he suffered "anxiety, stress, loss of employment, loss of funds, [and] loss of Honor Pod privilege[s]" as a result of the false allegations, and that he "had to be treated for blood pressure issues and placed on medication." Id. at 7. He also alleges that he lost good time credits, visitation privileges, and phone privileges, and that he was subjected to "review for possible increase in security custody level." Id. at 9.

Liberally construed, Cuozzo's amended complaint sets forth the following claims or groups of claims:

Claim 1:     Warring pursued disciplinary charges against Cuozzo in retaliation for accessing the courts and the institutional grievance process, and in a manner that deprived him of procedural due process and equal protection, thereby violating the First, Eighth, and Fourteenth Amendments.

Claim 2:     Warring opened Cuozzo's legal mail outside his presence in violation of the First, Sixth, and Fourteenth Amendments.

Claim 3:     Sims violated Cuozzo's rights under the First, Eighth, and Fourteenth Amendments by failing to provide fair and unbiased disciplinary hearings out of retaliation for their negative history.

Claim 4:     Sims violated Cuozzo's right to due process under the Fourteenth Amendment by precluding him from presenting documentary evidence and relevant witnesses at his disciplinary hearings and by failing to properly conduct the hearings.

Claim 5:     Sims restricted Cuozzo's telephone privileges in retaliation for filing suit against her in violation of the First, Eighth, and Fourteenth Amendments.

Claim 6:     Sims found two other inmates not guilty of the same offenses of which Cuozzo was convicted in violation of the Equal Protection Clause of the Fourteenth Amendment.

Claim 7:     Kanode upheld Cuozzo's disciplinary convictions, directed others to increase his security level, and failed to act after being notified of various alleged wrongs in violation of the First, Eighth, and Fourteenth Amendments.

Claim 8:     Manis failed to properly address Cuozzo's appeals of his disciplinary convictions and failed to remedy alleged wrongs in violation of the First, Eighth, and Fourteenth Amendments.

Id. at 5–32. Cuozzo seeks to recover monetary damages from the defendants, all of whom are sued in both their individual and official capacities. Id. at 1–3.

The defendants have moved to dismiss all but two of the above-listed claims pursuant to Federal Rule of Civil Procedure 12(b)(6). They do not seek dismissal of the retaliation claim asserted against Warring as part of Claim 1 or the due process claim asserted against Sims in

Claim 4. <u>See</u> Defs.' Mem. Supp. Mot. Dismiss, ECF No. 21, at 2 n.2–3 (advising that Warring and Sims will submit an answer as to those claims).

## II. Standard of Review

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (alteration in original) (internal quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555, 557).

Where, as here, a complaint was filed <u>pro se</u>, it must be construed liberally. <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of <u>pro se</u> complaints are not, however, without limits." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). A <u>pro se</u> complaint "must still 'state a claim to relief that is plausible on its face.'" <u>Sakyi v. Nationstar Mortg., LLC</u>, 770 F. App'x 113, 113 (4th Cir 2019) (quoting <u>Jackson v. Lightsey</u>, 775 F.3d 170, 178 (4th Cir. 2014)).

When defendants file a motion to dismiss under Rule 12(b)(6), courts are generally "limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" <u>Zak v. Chelsea Therapeutics</u>

Intern., Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)); see also Mayfield v. NASCAR, 674 F.3d 369, 377 (4th Cir. 2012) ("To warrant the denial of a 12(b)(6) motion, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level.") (internal quotation marks, citation, and alterations omitted). "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); see also Henderson v. City of Roanoke, No. 20-2386, 2022 U.S. App. LEXIS 6152, at *9 (4th Cir. Mar. 9, 2022) (emphasizing that "no litigant is exempt from [this] well-established rule"). Accordingly, in ruling on a motion to dismiss, the court may not consider additional factual allegations contained in a response in opposition. See Broam v. Bogan, 320 F.3d 1023, 1032 n.3 (9th Cir. 2003) (noting that facts raised for the first time in an opposition brief may not be considered "[i]n determining the propriety of a Rule 12(b)(6) dismissal" but "should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice").

### III.    Discussion

Cuozzo filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278,

284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017) (internal quotation marks and citation omitted).

### A.    Eighth Amendment Claims

The court will begin by addressing Cuozzo's claims for alleged violations of the Eighth Amendment's prohibition against "cruel and unusual punishments," U.S. Const. amend. VIII,[2] which are asserted as part of Claims 1, 3, 5, 7, and 8. The Supreme Court has interpreted this prohibition to require prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, the Eighth Amendment "applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019).

To state a prison conditions claim under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate (1) that "the deprivation alleged [was], objectively, sufficiently serious," and (2) that "prison officials acted with deliberate indifference." Id. at 351, 361 (internal quotation marks and citations omitted). To satisfy the first requirement, a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the [plaintiff's] exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). To satisfy the second

---

[2] The Eighth Amendment's proscription of cruel and unusual punishment is applicable to state officials through the Fourteenth Amendment. Gordon v. Schilling, 937 F.3d 348, 356 n.11 (4th Cir. 2019).

6

requirement, a plaintiff must allege facts sufficient to demonstrate that a correctional official actually knew of and disregarded an objectively serious condition, medical need, or risk of harm. Id. This is an "exacting standard," which is not met by "mere negligence." Jackson, 775 F.3d at 178.

Applying these principles, the court concludes that Cuozzo's amended complaint fails to state a viable claim under the Eighth Amendment. Cuozzo alleges that the defendants' actions caused him to suffer anxiety, stress, and "blood pressure issues" that required medication. See, e.g., Compl. at 7. Even assuming that these physical and emotional issues were sufficiently serious to satisfy the objective component, Cuozzo does not allege, much less plausibly demonstrate, that any of the defendants actually knew of and disregarded a serious condition or risk of harm, as required to meet the subjective component. His conclusory allegations that the defendants acted with deliberate indifference and subjected him to cruel and unusual punishment are insufficient to satisfy the applicable pleading requirements. See Brown v. Rozum, 453 F. App'x 127, 129 (3d Cr. 2011) (emphasizing that "conclusory allegations that the defendants were deliberately indifferent are insufficient" to state a claim) (citing Twombly, 550 U.S. at 555). Thus, the amended complaint fails to state a claim under the Eighth Amendment against any of the defendants.

### B.  Procedural Due Process Claims

The defendants seek dismissal of the procedural due process claims asserted against Warring, Kanode, and Manis. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a

plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).

### 1.   Warring

As part of Claim 1, Cuozzo contends that Warring violated his right to procedural due process by not submitting the disciplinary offense reports in a timely manner. See Am. Compl. at 11–12. Cuozzo cites to VDOC Operating Procedure ("OP") 861.1, which provides that a disciplinary offense report "should be submitted during the shift when evidence supporting the Disciplinary Offense Report is discovered, or when the investigation is completed . . . ." VDOC OP 861.1 at 19.[3] Cuozzo emphasizes that Warring did not submit the reports against him until April 2021, approximately four months after prison employees allegedly intercepted packages containing suboxone. Cuozzo claims that the "pre-accusatory delay extremely hindered [his] ability to effectively defend himself against the allegation[s], as witnesses were transferred and an investigator involved quit his job . . . ." Am. Compl. at 11.

In Wolff v. McDonnell, 418 U.S. 539 (1974), "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits . . . ." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff, 418 U.S. at 555). The Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest must receive: (1) written notice of the charges against him at least 24

---

[3] OP 861.1 is available online at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-861-1-rh.pdf (last visited Aug. 17, 2022).

hours before a hearing; (2) an opportunity to call witnesses and present evidence unless doing so would be unduly hazardous to institutional safety or correctional goals; (3) a written statement describing the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. Wolff, 418 U.S. at 563-71.

Cuozzo's amended complaint does not plausibly allege that Warring deprived him of the procedural protections afforded under Wolff. As other courts have recognized, Wolff "only requires that an inmate receive written notice of the charges at least 24 hours before a hearing." Gross v. Warden, 720 F. App'x 94, 96–97 (3d Cir. 2017) (emphasis added). "Wolff does not require the issuance of an incident report within 24 hours of the incident" or otherwise impose a time limit on charging inmates with prison disciplinary infractions. Id.; see also Harrison v. Vereen, No. 3:20-cv-00295, 2021 U.S. Dist. LEXIS 108611, at *5 (S.D. Miss. May 12, 2021) ("Although Wolff does contain a 24-hour notice requirement, that requirement is concerned with the time period between notification of the charges and the disciplinary hearing . . . ."). Thus, a delay in initiating disciplinary proceedings against an inmate does not, in and of itself, deprive an inmate of due process. Id. Nor does the alleged failure to comport with prison directives or regulations. Consequently, even if Warring did not comply with OP 861.1, such violation is not independently actionable under § 1983. See Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) ("[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue.") (emphasis in original) (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

Moreover, Cuozzo's amended complaint does not contain enough facts to allow the court to reasonably infer that he was prejudiced by the delay. See, e.g., Ortiz v. Holt, 390 F.

App'x 150, 152 (3d Cir. 2010) ("Ortiz cannot show that his right to due process was violated by the delay where <u>Wolff</u> did not require that a hearing be held within three days (or a specific time frame) and where any delay in holding his hearing did not prejudice him."). Although Cuozzo contends that the delay hindered his ability to effectively defend himself, he offers no facts to support this assertion. He does not identify the witnesses he was prevented from calling, describe their anticipated testimony, or explain why their testimony was necessary. His conclusory allegations of prejudice are insufficient to survive dismissal. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

For these reasons, Cuozzo has failed to plausibly allege that his right to due process was violated by the delay in pursuing disciplinary charges against him. Accordingly, the procedural due process claim asserted as part of Claim 1 is subject to dismissal under Rule 12(b)(6).[4]

## 2. Kanode and Manis

---

[4] Cuozzo also complains that some of the evidence compiled against him by Warring was "hearsay." Am. Compl. at 12. However, a disciplinary hearing is "not a criminal trial, and, therefore, [an inmate charged with a disciplinary offense is] not entitled to the full panoply of rights afforded to criminal defendants at trials, including the right of confrontation or the Federal Rules of Evidence." <u>Tedesco v. Sec'y for the Dep't of Corr.</u>, 190 F. App'x 752, 757 (11th Cir. 2006) (citing <u>Wolff</u>, 418 U.S. at 567–68); <u>see also</u> <u>Baker v. Lyles</u>, 904 F.2d 925, 932–33 (4th Cir. 1990) (holding that the introduction of a hearsay statement by an unidentified informant during a prison disciplinary hearing did not violate an inmate's right to due process). Thus, the alleged introduction of hearsay evidence, standing alone, "does not state a due process claim, as 'adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination.'" <u>Smith v. W.C.C.R.C.F.</u>, No. 1:11cv-00113, 2011 U.S. Dist. LEXIS 72142, *1 (N.D. Miss. July 5, 2011) (quoting <u>Wolff</u>, 418 U.S. at 678).

The defendants have also moved to dismiss the procedural due process claims asserted against Kanode and Manis in Claims 7 and 8.[5] Exhibits submitted by Cuozzo reveal that Kanode and Manis upheld his disciplinary convictions on appeal. See, e.g., Am. Compl. Ex. 55 & 58, ECF No. 16 at 121 & 140. Cuozzo alleges that both defendants were "put on notice of the Due Process violations within [his] disciplinary proceedings" and that they did "nothing to remedy the wrongs." Am. Compl. at 29–31.

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's wrights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citation omitted). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (quoting Iqbal, 556 U.S. at 676). "Importantly, mere knowledge of such a deprivation does not suffice." Id. This is true even for supervisors. See Iqbal, 556 U.S. at 677 (rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

Against this backdrop, the court concludes that the amended complaint fails to state a procedural due process claim against Kanode and Manis. At most, Cuozzo's allegations indicate that Kanode and Manis were put on notice of alleged due process violations at his disciplinary hearings. The allegations do not plausibly suggest that these supervisory officials personally deprived him of procedural due process. See Wright, 766 F.2d at 850 (holding that

---

[5] As indicated above, the defendants have not moved to dismiss the procedural due process claim asserted against Sims in Claim 4.

the warden was "not sufficiently personally involved in the hearing process to be liable under § 1983 for any procedural defects" merely because he received a letter complaining about the denial of due process at the hearing); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (holding that the receipt of two letters from an inmate complaining of alleged due process violations was insufficient to demonstrate the requisite personal involvement on the part of a prison administrator).

Cuozzo's allegations against Kanode and Manis also fail to state a viable claim of supervisory liability under the governing standard. In order to state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted); see also Slakan v. Porter, 737 F.2d 368, 372-74 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks and citation omitted); see also Slakan, 737 F.2d at 373 (noting that a plaintiff "cannot satisfy his burden of

proof by pointing to a single incident or isolated incidents"). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Wilkins, 751 F.3d at 226 (internal quotation marks and citation omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted).

To the extent that Cuozzo is attempting to proceed against Kanode and Manis on a theory of supervisory liability, his amended complaint does not set forth sufficient factual allegations to satisfy the foregoing elements. Among other deficiencies, Cuozzo does not plausibly allege that Kanode or Manis continuously failed to act in the face of documented widespread violations. Cuozzo's conclusory assertions against Kanode and Manis simply do not suffice to state a cognizable claims against these defendants. See Hoffman v. Office of the State Atty., 793 F. App'x 945, 954 (11th Cir. 2019) ("Because the plaintiffs' claims of supervisory liability are supported by conclusory allegations, the complaint does not contain sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks and citation omitted). Thus, the claims for alleged due process violations asserted as part of Claims 7 and 8 must be dismissed.

### C.   Equal Protection Claims

The defendants also seek dismissal of the equal protection claims asserted against Warring and Sims. The Equal Protection Clause of the Fourteenth Amendment provides that

"[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."
U.S. Const. amend. XIV, § 1. This provision "does not take from the States all power of
classification, but keeps governmental decision-makers from treating differently persons who
are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal
quotation marks and citations omitted). To state an equal protection claim, "a plaintiff must
plead sufficient facts to demonstrate plausibly that he was treated differently from others who
were similarly situated and that the unequal treatment was the result of discriminatory animus."
Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011); see also Fauconier
v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020).

### 1.    Warring

As part of Claim 1, Cuozzo summarily alleges that Warring violated his right to "equal
protections of the laws related to disciplinary hearings and procedures." Am. Compl. at 10.
The court agrees with the defendants that such a "naked assertion devoid of further factual
enhancement" is insufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (internal
quotation marks, citation, and alteration omitted). Accordingly, the equal protection claim
asserted against Warring is subject to dismissal under Rule 12(b)(6).

### 2.    Sims

In Claim 6, Cuozzo asserts that Sims violated his right to equal protection by treating
him differently than two other inmates who were charged with the same misconduct. See
Compl. at 28. Cuozzo alleges that "the officer" admitted in each of the inmate's disciplinary
cases that "he did not personally open the package" but that Sims only dismissed the other

inmates' disciplinary charges. Id. Cuozzo further alleges that he made Sims "aware of the error" during a subsequent meeting but that she did "nothing to remedy the violations." Id.

Although Cuozzo provides slightly more context for his equal protection claim against Sims, the court nonetheless concludes that his allegations are insufficient to state a claim upon which relief may be granted. With respect to the threshold element of disparate treatment, the amended complaint does not contain sufficient factual content to allow the court to reasonably infer that Cuozzo was treated less favorably than "persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (emphasis added). Likewise, the complaint does not plausibly allege that the purported "error" was the result of intentional or purposeful discrimination. See Pronin v. Johnson, 628 F. App'x 160, 164 (4th Cir. 2015) (emphasizing that "a valid claim for a violation of equal protection . . . must allege the requisite discriminatory intent with more than mere conclusory assertions"); see also Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 825 (4th Cir. 1995) (explaining that "[w]hile an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals, a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim"). Consequently, the equal protection claim against Sims is also subject to dismissal.

### D.    Legal Mail Claims

In his second group of claims against Warring, Cuozzo alleges that Warring opened legal mail addressed to him from the Clerk of the Nottoway County Circuit Court, outside his presence, on December 10, 2020. Am. Compl. at 14. Cuozzo claims that "[w]hen a prisoner's

mail from a Circuit Court is opened 'outside his presence,' his First, Sixth, and Fourteenth Amendment Due Process rights are violated." Id.

### 1.    Right to Free Speech

"The First Amendment, as incorporated through the Fourteenth Amendment, prohibits States from 'abridging the freedom of speech.'" Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (quoting U.S. Const. amend. I). This proscription extends to government regulations that directly burden speech, as well as government actions that have indirect chilling effects. Id. The Fourth Circuit has recognized that opening an inmate's legal mail outside his presence "can chill protected speech." Id. However, isolated incidents of legal mail being opened outside an inmate's presence do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (holding that "a few isolated instances of plaintiff's mail being opened outside of his presence," in violation of a jail policy, "were not of constitutional magnitude"); see also Gibson v. Erickson, 830 F. App'x 372, 373 (3d Cir. 2020) (explaining that "while a pattern or practice of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation, a single instance is usually not enough") (internal quotation marks and citations omitted); Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008) (agreeing with the Third Circuit that a "pattern and practice" of opening legal mail outside an inmate's presence impinges the First Amendment) (internal quotation marks and citation omitted); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.") (internal quotation marks and citations omitted).

As indicated above, Cuozzo's amended complaint describes one instance in which Warring opened legal mail outside his presence. Cuozzo does not allege that Warring's conduct constituted a "deliberate pattern or practice." Haze, 961 F.3d at 659 (holding that a reasonable jury could find that the defendants engaged in a deliberate pattern or practice where the plaintiff alleged "fifteen instances of interference with his legal mail"). Based on the foregoing case law, the court concludes that the allegations in the amended complaint, as currently pled, fail to state a violation of his First Amendment right to free speech.

## 2.   Right to Access the Courts

State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." DeMarco v. Davis, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks and citation omitted); see also Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995). To the extent that Cuozzo's allegations regarding his legal mail could be construed as a claim of denial of access to the courts, he has not alleged facts sufficient to show that he suffered an "actual injury" as a result of the denial of access. See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (emphasizing that a prisoner must "identify an actual injury" resulting from the denial of access and "cannot rely on conclusory allegations"). To satisfy the "actual injury" requirement, a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded as a result of the defendants' actions. Christopher v. Harbury, 536 U.S. 403, 415 (2002) (quoting Lewis, 518 U.S. at 353 & n.3). In other words, "the underlying cause of action, whether

anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Id.

Here, Cuozzo does not allege that the one-time opening of his legal mail hindered his ability to pursue a nonfrivolous legal claim in the Circuit Court of Nottoway County or any other court. Consequently, his allegations against Warring fail state a claim for denial of access to the courts.

### 3.   Right to Counsel

Cuozzo's current allegations are also insufficient to state a plausible violation of the Sixth Amendment, which guarantees certain rights to criminal defendants. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). The Fourth Circuit has recognized that "[i]nspecting an inmate's legal mail may implicate the Sixth Amendment right to communicate freely with his attorney in a criminal case." Altizer v. Deeds, 191 F.3d 540, 549 n.14 (4th Cir. 1999). As was true in Altizer, however, Cuozzo "has not alleged that he was communicating with an attorney concerning any pending criminal matters." Id. Nor has he alleged that Warring opened legal mail related to a criminal case. Accordingly, Cuozzo has not stated a viable claim for relief under the Sixth Amendment.

For these reasons, the court concludes that Cuozzo's allegations that Cuozzo improperly opened his legal mail are insufficient to state an actionable constitutional claim under § 1983.

### E.   Retaliation Claims

In Claims 3, 5, 7 and 8, Cuozzo claims that certain defendants retaliated against him for engaging in activity protected by the First Amendment. Although retaliation is not specifically referenced in the Constitution, it "is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Am. Civil Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). As relevant here, prison officials may not retaliate against an inmate for exercising his constitutional right to access the courts, Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978), nor may they take actions that violate the First Amendment "right to file a prison grievance free from retaliation," Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

In the prison context, courts "treat [retaliation] claims with skepticism because 'every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" Cochran, 73 F.3d at 1317 (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Inmates "who claim their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [dismissal]." Adams, 40 F.3d at 74. In order to state a colorable retaliation claim under § 1983, an inmate must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

### 1.    Disciplinary Hearings

In Claim 3, Cuozzo asserts that Hearing Officer Sims subjected him to unfair and procedurally inadequate disciplinary hearings in retaliation for filing grievances against her

when he was previously incarcerated at GRCC. <u>See</u> Am. Compl. at 18–19. To support this claim, Cuozzo alleges that he was initially transferred to GRCC in 2015, when Sims worked in the facility's mailroom. <u>Id.</u> at 18. Cuozzo alleges that he filed mail-related grievances against Sims "on a multitude of occasions," which caused them to have a "combative relationship." <u>Id.</u> Cuozzo was subsequently transferred to Lawrenceville Correctional Center, where he remained for approximately two years. <u>Id.</u> Cuozzo returned to GRCC in 2019, at which time Sims had been "reassigned to the position of Institutional Hearings Officer." <u>Id.</u> at 19. Cuozzo alleges that he was served with disciplinary offense reports on April 2, 2021, and that he subsequently voiced concerns to other prison officials about Sims's ability to serve as a fair and impartial hearing officer. <u>Id.</u> Nonetheless, Sims proceeded to preside over Cuozzo's disciplinary hearings in May 2021 and found him guilty of two of the charges. <u>Id.</u> Cuozzo alleges that Sims "allowed multiple due process violations within the disciplinary hearings" out of retaliation for the grievances that he had previously filed against her. <u>Id.</u>

In moving to dismiss this claim of retaliation, the defendants primarily argue that Cuozzo has failed to plausibly allege that there was a causal relationship between his protected activity and Sims's conduct. Having reviewed Cuozzo's allegations and applicable case law, the court agrees. The allegations indicate that Cuozzo filed grievances against Sims at least four years before she presided over his disciplinary hearings. Under existing precedent, such a lengthy lapse in time between Cuozzo's protected activity and the alleged adverse actions is "sufficient to negate any inference of causation." <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 278 (4th Cir. 2001); <u>see also</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that a lapse over three years between the protected activity

and the adverse action negated any inference that a causal connection existed between the two). Moreover, the amended complaint does not contain any other facts that would allow the court to reasonably infer that Sims's actions during the course of the disciplinary proceedings were causally connected to Cuozzo's previous grievances. While Cuozzo may believe that any adverse action taken by Sims would be retaliatory, "simply alleg[ing] retaliation" is insufficient to establish a causal connection. Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999); see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."). Accordingly, the court concludes that the retaliation claim asserted in Claim 3 is subject to dismissal.

### 2.    Loss of Telephone Privileges

In Claim 5, Cuozzo asserts that Sims restricted his telephone privileges for six weeks in retaliation for filing the instant action against her and other prison officials. To support this claim, Cuozzo alleges that Sims learned about the lawsuit on September 21, 2021, when she saw a copy of the original complaint that Cuozzo had provided to his counselor. Am. Compl. at 26. Two days later, Sims "personally directed" that Cuozzo's "phone privileges be restricted." Id. (citing Compl. Ex. 62, ECF No. 16 at 151). Cuozzo alleges that Sims did not have authority to retroactively restrict his telephone privileges as a penalty for his previous disciplinary convictions and that she nonetheless did so as a "direct and blatant retaliatory action in response to having viewed [the complaint] naming her [as a defendant]." Id. at 27.

In moving to dismiss this claim, the defendants first argue that Cuozzo is unable to satisfy the second element under the particular facts of this case. More specifically, the

defendants contend that "the imposition of Cuozzo's telephone restrictions did not adversely affect his ability to access the court, as evidenced by his filing of this lawsuit." Br. Supp. Mot. Dismiss, ECF No. 21, at 15. For the following reasons, however, the court is unpersuaded.

The Fourth Circuit has held that "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rector & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citation omitted). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship." Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014). Although "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity," Constantine, 411 F.3d at 500, it "is not dispositive of the question of whether such action would likely deter a person of ordinary firmness," Martin, 858 F.3d at 249 (emphasis added). Courts have explained that "this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed . . . ." Thaddeus-X, 175 F.3d at 398; see also McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that while the "effect of the alleged conduct . . . need not be great in order to be actionable, . . . it must be more than de minimis") (internal quotation marks and citations omitted).

In this case, Cuozzo alleges that he had "full access" to the telephones before his privileges were restricted by Sims and that he made more than 60 calls between May 7, 2021, the date of his disciplinary hearings, and September 24, 2021. Comp. at 27. At this stage of the proceedings, the court is unable to conclude that the impact of subsequently losing telephone

privileges for more than six weeks was so inconsequential that it would not have deterred a person of ordinary firmness from exercising his First Amendment rights. See, e.g., Maben v. Thelen, 887 F.3d 252, 266–67 (6th Cir. 2018) (holding that the loss of certain privileges for seven days, including the right to use the telephone, could be considered an adverse action in the prison context).

The defendants alternatively argue that the amended complaint "fails to allege facts that would suggest that . . . there was a causal connection between [Cuozzo's] exercise of any First Amendment right and the restriction of his telephone privileges." Br. Supp. Mot. Dismiss at 21. As indicated above, however, Cuozzo alleges that Warring restricted his telephone privileges two days after she learned that Cuozzo was filing a federal lawsuit against her. Under existing precedent, the close temporal proximity between Cuozzo's protected activity and the restriction of his telephone privileges is sufficient to satisfy the causation element at this stage of the proceedings. See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 575 (4th Cir. 2015) (explaining that "close temporal proximity weighs heavily in favor of finding a genuine dispute as to causation"); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 706 (4th Cir. 2001) (finding that temporal proximity alone can create a genuine dispute as to causation). Consequently, the court concludes that Cuozzo has plausibly alleged that Cuozzo restricted his telephone privileges in retaliation for engaging in protected activity. Thus, the court will deny the defendants' motion to dismiss as to the retaliation claim asserted in Claim 5.

### 3.    Security Reclassification

As part of Claim 7, Cuozzo asserts a claims of retaliation against Warden Kanode. In particular, Cuozzo alleges that Kanode directed other prison employees to increase his security

level in retaliation for sending an Assistant Attorney General a letter advising of his intent to file a federal lawsuit. Am. Compl. at 25. Cuozzo contends that the claim is supported by two reclassification forms dated September 14, 2021. Id. (citing Am. Compl. Ex. 56).

The court agrees with the defendants that Cuozzo's current allegations fail to state a cognizable claim of retaliation against Kanode. The reclassification forms attached to the amended complaint do not mention Kanode, and the pleading is otherwise devoid of facts sufficient to establish that Kanode was personally involved in altering Cuozzo's security level. Cuozzo's conclusory assertion that Kanode directed other employees to take an adverse action against him is insufficient to withstand review under Rule 12(b)(6). See, e.g., Blantz v. Cal. Dep't of Corr. & Rehab., 727 F.3d 917, 927 (9th Cir. 2013) ("Blantz's complaint does not contain any specific factual allegations regarding Hill's involvement in the actions giving rise to this lawsuit . . . . Although Hill is alleged to have 'directed' the other defendants to take these actions, no factual allegations support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss.").

### 4.    Liability for the Retaliatory Acts of Others

Cuozzo also alleges, as part of Claim 7, that Kanode was "put on notice" of "retaliatory acts/actions taken by [other defendants]" and "did absolutely nothing to remedy the wrongs." Am. Compl. at 29. Similarly, as part of Claim 8, Cuozzo alleges that Manis "fail[ed] to remedy the alleged wrongs after learning of them," thereby subjecting him to liability for retaliation.[6] Id. at 31.

---

[6] In his response to the defendants' motion, Cuozzo acknowledges that he has not alleged that Manis personally retaliated against him for engaging in activity protected by the First Amendment. See Pl.'s Resp. Mot. Dismiss, ECF No. 31, at 14.

As indicated above, "mere knowledge [of an alleged constitutional] deprivation does not suffice" to establish personal liability under § 1983. Williamson, 912 F.3d at 171; see also Iqbal, 556 U.S. at 677. Likewise, "supervisory liability . . . will not attach for a mere failure to act." Crawford v. Tilley, 15 F.4th 752, 761 (6th Cir. 2021); see also Shaw, 13 F.3d at 799) (setting forth the standard for supervisory liability under § 1983). To the extent Cuozzo seeks to hold Kanode and Manis liable for the retaliatory acts of others, his current allegations are insufficient to withstand dismissal under Rule 12(b)(6). Thus, the retaliation claims asserted in Claims 7 and 8 must be dismissed.

## F.   Official-Capacity Damages Claim

Finally, to the extent that Cuozzo seeks to recover monetary damages from the defendants in their official capacities, the defendants correctly note that such relief is not available under § 1983. Claims against state officials in their official capacities are considered claims against the state, and the state is entitled to Eleventh Amendment immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Thus, state officials acting in their official capacities are not considered "persons" under § 1983, and the Eleventh Amendment precludes any official-capacity claims for damages. Will, 491 U.S. at 71; Cromer, 88 F.3d at 1332.

## IV.   Conclusion

For the reasons set forth herein, the defendants' partial motion to dismiss, ECF No. 20, is **GRANTED IN PART AND DENIED IN PART**. Because Cuozzo may be able to cure some of the pleading deficiencies identified above, the court will grant him an opportunity to file an amended complaint within thirty days.

An appropriate order will be entered.

Entered: August 19, 2022

Digitally signed by Michael
F. Urbanski      Chief U.S.
District Judge
Date: 2022.08.19 14:34:20
-04'00'

Michael F. Urbanski
Chief United States District Judge

26