CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 25, 2024

LAURA A. AUSTIN, CLERK
BY:
　　　/s/T. Taylor
　　DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **WILLIAM JAY CUOZZO,** ) | |
| **Plaintiff,** ) | **Case No. 7:21-cv-00501** |
| ) | |
| **v.** ) | |
| ) | **By: Michael F. Urbanski** |
| **CRAIG F. WARRING, <u>et al.</u>,** ) | **Senior United States District Judge** |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

William Jay Cuozzo, a Virginia inmate proceeding <u>pro se</u>, filed this civil action under 42 U.S.C. § 1983. He seeks to recover monetary damages for alleged violations of his rights under the First and Fourteenth Amendments to the United States Constitution. The case is presently before the court on a motion for summary judgment filed by the remaining defendants, Craig F. Warring and H.R. Sims. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

### <u>Factual Background</u>

The following facts are presented in the light most favorable to Cuozzo. See <u>Ray v. Roane</u>, 93 F.4th 651, 655 (4th Cir. 2024) ("In considering a motion for summary judgment, a district court must view the evidence in the light most favorable to the non-movant . . . and draw all reasonable inferences in [his] favor.").

The events giving rise to this action occurred at Green Rock Correctional Center ("Green Rock"), where Cuozzo was previously incarcerated. During the time period at issue, Warring was the Institutional Investigator at Green Rock, and Sims was the Inmate Hearings Officer. <u>See</u> Warring Aff. ¶ 1, ECF No. 70-4; Sims Aff. ¶ 1, ECF No. 70-2.

On July 1, 2020, Cuozzo received a $50.00 donation from Reverend Alonza George, the director of a nonprofit religious organization, to assist with legal expenses. Verified 2d Am. Compl. ("Am. Compl."), ECF No. 44, at 3–4.[1]  The money was deposited into Cuozzo's inmate trust account. Id. (citing Am. Compl. Ex. 1, ECF No. 44-1). That same day, the money was removed from Cuozzo's account at the direction of Warring's office on the basis that the transaction was unauthorized. Am. Compl. Ex. 3(B), ECF No. 44-1. Arrangements were made for the money to be returned to George. Id.

Cuozzo subsequently filed an informal complaint and a regular grievance alleging that the money from George had been improperly removed from his account. Am. Compl. Ex. 4, ECF No. 44-1. Cuozzo also initiated the process of pursuing a criminal complaint against Warring for petit larceny. Am. Compl. 4. On August 21, 2020, Cuozzo withdrew the complaints after Warden Melvin Davis intervened and established that Cuozzo and other inmates were, in fact, permitted to receive funds from Reverend George and his "approved religious entity." Id.

On October 27, 2020, Sonya Mercier sent Cuozzo $240.00 as part of a judgment that Cuozzo had obtained in Nottoway County General District Court. Id. at 5. After the money was deposited into Cuozzo's inmate trust account, Warring's office directed the business office to remove the money on the basis that the transaction was unauthorized. Am. Compl. Ex. 8, ECF No. 44-1. The business office informed Cuozzo that the transaction was unauthorized because Mercier was "not an approved visitor" for Cuozzo. Id. However, Mercier had been

---

[1] A verified complaint is "the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted).

added to Cuozzo's approved visitor list more than three months earlier. Am. Compl. Ex. 9, ECF No. 41-1.

Cuozzo subsequently filed an informal complaint challenging the removal of the $240.00 deposit, followed by a regular grievance. Am. Compl. Ex. 8. Additionally, Cuozzo "again initiated the process of seeking a criminal complaint through the Magistrate's Office against Warring for petit larceny." Am. Compl. 6. Cuozzo's efforts led to Warring being "served with papers" from the local Commonwealth's Attorney. Warring Aff. ¶ 8. Cuozzo ultimately "ceased attempts" to pursue criminal charges against Warring following a "mediation between Cuozzo and the Institutional Ombudsman," during which Cuozzo was assured that "corrective actions" would be taken against Warring. Am. Compl. 6.

Around the same time, Cuozzo was placed under investigation for drug activity by Warring's office and the Virginia Department of Corrections ("VDOC") Special Investigations Unit. Id. at 7; see also Warring Aff. ¶ 8. In November and December 2020, staff in the mailroom at Green Rock intercepted suspicious packages purporting to contain legal mail. Warring Aff. ¶ 8. Each of the suspicious packages was found to contain Suboxone (buprenorphine), a Schedule III controlled substance. Id. at ¶¶ 8, 9; see also Va. Code § 54.1-3450.

On April 1, 2021, Warring issued four disciplinary offense reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband on four separate dates. Am. Compl. Exs. 11, 12, 14, 17, ECF No. 44-1. Warring reported that packages containing Suboxone had been intercepted in the mailroom on November 16, 2020 (Case No. GROC-2020-2742), November 20, 2020 (Case No. GROC-

2020-2743), December 7, 2020 (Case No. 2020-2744), and December 10, 2020 (Case No. GROC-2020-2745). <u>Id.</u> Three of the packages were addressed to other inmates, and the fourth package intercepted on December 10, 2020, was addressed to Cuozzo. <u>Id.</u> In the three disciplinary offense reports associated with packages addressed to other inmates, Warring reported that the charges were supported by the fact that Cuozzo had spoken with a female by telephone on December 2, 2020, and informed her "that the next package should be for 'Adrian.'" <u>Id.</u> The package intercepted on December 7, 2020, was addressed to Adrian Simmons. <u>Id.</u> The packages intercepted on November 16, 2020, and November 20, 2020— prior to the alleged telephone call— were addressed to Derek Powell and Journy Snead. <u>Id.</u> Cuozzo maintains that each of the charges were false and that he was not involved with any of the packages described in the disciplinary offense reports. Am. Compl. 7, 9, 11, 15.

Sims conducted the disciplinary hearing for each charge on May 7, 2021. Cuozzo and Warring were present for the hearing in Case No. GROC-2020-2742, which was based on the package intercepted on November 16, 2020. Sims Aff. ¶ 7. Warring testified first, and Cuozzo was permitted to question Warring. <u>Id.</u> Based on the evidence and testimony presented at the hearing, Sims "dismissed the charge because [Warring] failed to establish the connection between [the] telephone call made [by Cuozzo] on December 2, 2020 and the package received on November 16, 2020." <u>Id.</u> For the same reason, Sims dismissed the charge in Case No. GROC-2020-2743, which was based on the package intercepted on November 20, 2020. <u>See</u> <u>id.</u> at ¶ 9 ("At the conclusion of the hearing, based on the preponderance of the evidence, I dismissed the charge because [Warring] failed to establish the connection between the telephone call made on December 2, 2020 and the package received on November 20, 2020.").

After the first two charges were dismissed, Warring asked that Cuozzo be excused from the hearing room so that he could have a "brief consult" with Sims. Pl.'s Add'l Evid., ECF No. 81.[2] At that time, Warring "advised [Sims] of the need, per Assistant Warden Coleman, to convict Cuozzo at any cost due to the active pursuit he was engaged in . . . to have [Warring] arrested for petit larceny" and the fact that Cuozzo was "known for filing litigations in the courts." Id. "Subsequent to that conversation[,] the hearings resumed and [Cuozzo] was found guilty on the remaining two [charges]." Id.

During the hearing in Case No. GROC-2020-2744, Sims denied Cuozzo's request for two staff witnesses for lack of relevance. Sims. Aff. ¶ 11. Sims also deemed "all" of the documentary evidence requested by Cuozzo to be "irrelevant." Id. Additionally, "[w]itness requests for inmate [Adrian] Simmons and Ricky McCray . . . were deemed not relevant because the witness request forms were not returned." Id. at ¶ 12. At the conclusion of the hearing, Sims "found Cuozzo guilty of the charge [in Case No. 2020-2744] and modified the disciplinary offense code to 138." Id. ¶ 13. After finding Cuozzo guilty, Sims imposed a $15.00 fine. Id.

During the hearing in Case No. GROC-2020-2745, Sims granted in part and denied in part Cuozzo's requests for documentary evidence. Id. at ¶ 15. She also denied his request for Ricky McCray to appear as a witness. Id. Warring testified at the hearing, and Cuozzo was permitted to question him. Id. at ¶ 16. Cuozzo "denied having anything to do with the package [addressed to him] and suggested that somebody was trying to 'set him up.'" Id. At the

---

[2] The additional evidence consists of a typed letter that Warring sent to Carl Manis, the Western Regional Administrator, on September 7, 2021, in response to questions raised regarding Cuozzo's disciplinary hearings. The letter will be discussed in greater detail below.

conclusion of the hearing, Sims found Cuozzo guilty and penalized him with a $15.00 fine. Id. Because the conviction constituted Cuozzo's second conviction for the same Category I offense code within one year, Sims also imposed the following enhanced penalties set forth in VDOC Operating Procedure ("OP") 861.1: (1) no access to telephone calls for six months; (2) non-contact visits from immediate family only for six months; (3) Good Time Class Level IV for one year; and (4) review for the possibility of a security level increase. Sims Aff. ¶ 17; see also OP 861.1(VI)(B)(1)(a) (eff. Jan. 1, 2016) (setting forth these enhanced penalties).

At the time the penalties were issued, David Robinson, the Chief of Corrections Operations, had issued a memorandum prohibiting telephone restrictions from being imposed as a penalty under OP 861.1 due to the COVID-19 pandemic. Sims Aff. Encl. I, ECF No. 70-2. Sims noted in her disciplinary decision that the six-month telephone restriction imposed in Case No. GROC-2020-2745 would "not [be] enforced due to Covid." Sims Aff. Encl. F, ECF No. 70-2.

Cuozzo appealed the disciplinary hearing decisions reached in Case Nos. GROC-2020-2744 and GROC-2020-2745. Warden Barry Kanode denied both appeals at Level I of the appeal process. Sims Aff. Encl. E, G, ECF No.70-2. Cuozzo then submitted Level II appeals to Regional Administrator Carl Manis. Id.

Based on some of the issues raised on appeal, Kanode contacted Warring and requested "an update and investigatory summary" regarding the disciplinary charges in Case Nos. GROC-2020-2744 and GROC-2020-2745. Pl.'s Add'l Evid., ECF No. 81-1, at 1. In response, Warring sent Manis a typed letter dated September 7, 2021. Id. In the letter, Warring acknowledged that "[t]here was no evidence that Inmate Cuozzo had any knowledge of [the

6

suspicious package addressed to him] nor any connection supporting that he was involved in the sending of the package to himself." Id. at 1. Warring also acknowledged that he "was unable to identify Inmate Cuozzo as an actual primary offender suspect" during his investigation and that he "truly could not tie Cuozzo into the operation, even with the December 2nd telephone conversation" mentioned in the disciplinary offense reports. Id. at 2. Warring reported that the "conclusion of that investigation was that the party Cuozzo was speaking with was [someone] who sent him . . . pornographic photographs." Id.

Warring also informed Manis that Cuozzo had attempted to have him arrested and filed multiple grievances against him. Id. Warring noted in the letter that he "constantly briefed the Warden and Assistant Warden" regarding the investigation and that they had insisted that he proceed with the disciplinary charges, even if the evidence did not support them:

> I was instructed to "do whatever I had to do" in order to send a message to Inmate Cuozzo and the population at large that the Administration was not going to tolerate any bullying efforts through the threats of accessing the courts against staff for their efforts to maintain orderly operations of the facility. The directive came from Assistant Warden Coleman. I followed his directive.
>
> . . . .
>
> I too have reviewed the Disciplinary Hearings in CORIS and I find the points within the hearings where he claims that I admitted there was no evidence to support the [disciplinary offense reports] as submitted. I continue to maintain that position. There was no evidence to support Inmate Cuozzo participated in any scheme to introduce contraband into Green Rock Correctional Center. However, when I attempted to retract my Reports lodged against him, I was instructed to just "leave it alone" so I did just that.

Id. at 2–3.

7

Despite the information contained in Warring's letter, Manis upheld Cuozzo's disciplinary convictions. <u>See</u> Sims Aff. Encls. E, G. Cuozzo alleges that the disciplinary convictions "caused [him] to lose approximately four years of earned good time credits." Am. Compl. 15. He also lost his job in the prison law library. Am. Compl. Ex. 23, ECF No. 44-1.

On September 21, 2021, Cuozzo met with his assigned counselor to have copies made of documents prepared for use in filing this action. Am. Compl. 25 (citing Am. Compl. Ex. 24, ECF No. 44-1). The documents included a copy of Cuozzo's original complaint, which named Sims as a defendant. <u>Id.</u> The counselor took the documents to another building to be copied. <u>Id.</u> When the counselor returned to the housing unit with the documents, "she was walking with Sims, . . . who was clearly identifiable on page one of the [complaint] as a named defendant to this litigation." <u>Id.</u>

Two days later, on September 23, 2021, Cuozzo's telephone privileges were suspended for 45 days. Pl.'s Supp'l Br. Ex. R, ECF No. 83-4. Although Sims denies being responsible for enforcing the telephone restriction, Sims Aff. ¶ 20, an Offender Telephone Suspension Notification form indicates that Sims personally approved the suspension. Pl.'s Supp'l Br. Ex. R, ECF No. 83-4.

On September 30, 2021, the Institutional Classification Authority ("ICA") recommended that Cuozzo's security level be rescored from Level 3 to Level 4. Morton Aff. Encl. C, ECF No. 70-3. The ICA also recommended that Cuozzo be transferred to a Level 4 security facility such as Keen Mountain Correctional Center or River North Correctional Center. <u>Id.</u> On October 5, 2021, Central Classification Services ("CCS") approved the recommendation and added Sussex I State Prison or Sussex II State Prison as a transfer option.

Id. CCS noted that a "more secure environment" was "required due to repeated attempts to breach the perimeter/obtain contraband." Id. Cuozzo was transferred to Sussex II State Prison on December 7, 2021, and assigned to general population. Morton Aff. ¶ 8, ECF No. 70-3.

## Procedural History

Cuozzo initially filed this civil action under 42 U.S.C. § 1983 against Warring, Sims, and other VDOC officials on September 28, 2021. He then filed an amended complaint that was the subject of a partial motion to dismiss. That motion was granted in part and denied in part on August 19, 2022, and Cuozzo was granted leave to file a second amended complaint.

On October 3, 2022, Cuozzo filed a second amended complaint against Warring and Sims. Cuozzo claims that both defendants retaliated against him for engaging in activity protected by the First Amendment. Cuozzo also claims that he was deprived of his Fourteenth Amendment right to due process during the disciplinary proceedings. He seeks to recover monetary damages from the defendants, both of whom are named in their individual capacities.

On December 6, 2022, Warring and Sims advised the court that Cuozzo had been indicted on related drug charges in the Circuit Court of Pittsylvania County, and they moved to stay further proceedings in this action until the conclusion of the criminal proceedings. That motion was granted on December 9, 2022.

Cuozzo proceeded to trial on the criminal charges on February 16, 2023. The trial transcript reflects that Cuozzo represented himself at trial. See Criminal Tral Tr. 1, ECF No. 70-5. That same day, a jury found Cuozzo guilty of "conspiracy to deliver drugs to an inmate,

as charged in the indictment," and "conspiracy to distribute a Schedule III controlled drug, as charged in the indictment." Id. at 400.

The court lifted the stay on August 11, 2023. Warring and Sims subsequently filed the pending motion for summary judgment. The motion has been fully briefed by both sides, including the submission of supplemental briefing. The matter is now ripe for decision.

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks omitted).

## Discussion

### I.      Retaliation Claims

Cuozzo claims that Warring and Sims retaliated against him for engaging in activity protected by the First Amendment. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." ACLU of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). Although retaliation is not specifically referenced in the Constitution, it is "nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Id. As relevant here, prison officials may not retaliate against an

inmate for exercising his First Amendment right of access to the courts. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). Likewise, "inmates possess a First Amendment right to be free from retaliation for filing a grievance." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545-46 (4th Cir. 2017).

To prevail on a retaliation claim, a plaintiff must establish three elements: (1) that he engaged in protected activity; (2) that the defendant took an adverse action that would deter a person of ordinary firmness from exercising his rights; and (3) that there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020). The first element is not at issue here; the defendants concede that Cuozzo engaged in protected activity by filing grievances and lawsuits and seeking other judicial remedies.

With respect to the second element, a plaintiff is required to show that a defendant's allegedly retaliatory conduct caused "more than a de minimis inconvenience" and that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship." Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014). Although "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity," Constantine, 411 F.3d at 500, it "is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." Martin v. Duffy, 858 F.3d 239, 250 (4th Cir. 2017).

11

The third element of a retaliation claim requires the plaintiff to show that "there was a causal relationship between his protected activity and the defendant's conduct." Id. at 249. The United States Court of Appeals for the Fourth Circuit has held that the causation element implicates "the burden-shifting framework of the same-decision test." Shaw, 59 F.4th at 130 (citing Martin, 977 F.3d at 299). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." Id. (quoting Martin, 977 F.3d at 301). If the plaintiff meets that burden, "[t]he burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." Id. "A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action." Eckerman v. Tenn. Dep't of Safety, 636 F.3d 202, 208 (6th Cir. 2010) (emphasis added). For instance, a plaintiff may meet his prima facie burden by showing "(1) that the defendants were aware of his engaging in protected activity and (2) some degree of temporal proximity to suggest a causal connection." Shaw, 59 F.4th at 130–31 (internal quotation marks and alterations omitted).

### A.    Warring

Cuozzo claims that Warring issued and pursued false disciplinary charges against him in retaliation for filing grievances and a criminal complaint against Warring. In moving for summary judgment on the retaliation claim asserted against Warring, the defendants acknowledge that a false disciplinary charge can satisfy the second (adverse action) element of a retaliation claim. Defs.' Mem. Supp. Mot. Summ. J. 37, ECF No. 70 (citing Booker, 583 F.

App'x at 44 (concluding that an inmate "produced sufficient evidence that [a prison official's] conduct would likely deter prisoners of ordinary firmness from exercising their First Amendment rights" where the record included evidence supporting the inmate's allegation as to the falsity of the charge issued by the prison official)). Nonetheless, the defendants attempt to distinguish <u>Booker</u> based on the assertion that "the four disciplinary charges filed against Cuozzo were legitimate" and that Cuozzo "did in fact commit these four disciplinary violations." <u>Id.</u> at 37–38. As was true in <u>Booker</u>, however, Cuozzo "was found not guilty" of two of the disciplinary offenses with which he was charged, and he has "specifically refuted" the charges resulting from the four packages intercepted in November and December 2020. <u>Booker</u>, 583 F. App'x at 44. Additionally, and even more importantly, Warring expressly acknowledged after the disciplinary hearings that there was "no evidence" to support the disciplinary offense reports issued against Cuozzo. Pl.'s Add'l Evid., ECF No. 81-1 at 2.

To the extent that the defendants argue that the jury's verdict on the conspiracy charges in the criminal case establishes that Cuozzo did, in fact, commit the disciplinary offenses with which he was charged, "a jury verdict is not evidence, but merely findings of fact, based on the evidence presented to [that jury]." <u>Sayger v. Riceland Foods, Inc.</u>, 735 F.3d 1025, 1034 (8th Cir. 2013) (internal quotation marks omitted). Thus, "the jury verdict itself [is] not admissible evidence." <u>Id.</u> Moreover, when cross-examined during the criminal trial, Warring acknowledged—consistent with his previous letter to Manis—that he uncovered no evidence linking Cuozzo to the package that was the subject of Disciplinary Case No. GROC-2020-2743:

| Q. [Cuozzo] | Okay. You're referring to the November 20th package. So that package was addressed to Journy Snead. |
|---|---|
| A. [Warring] | That is correct. |
| Q. [Cuozzo] | . . . Mr. Warring, was there anything in your investigations that you came up with that linked me to this package at all? |
| A. [Warring] | Initially no. |
| Q. [Cuozzo] | Is there anything that you've developed in your investigations that links me to this package? |
| A. [Warring] | Not in my investigation, no. |

Criminal Trial Tr. 215, ECF No. 70-5.

In short, there is sufficient evidence from which a reasonable finder of fact could determine that Cuozzo was falsely charged with responsibility for each of the Suboxone-filled packages that arrived in the Green Rock mailroom in November and December 2020. Because the issuance of a false disciplinary charge is the type of conduct that "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights," the evidence against Warring is sufficient to survive summary judgment on the second element. Booker, 583 F. App'x at 44.

The defendants alternatively argue that "there is no evidence of a causal connection between any protected activity and Defendant Warring's conduct." Defs. Mem. Supp. Mot. Summ. J. 36. This argument is also without merit. Warring's September 7, 2021, letter to Manis is clearly sufficient to create a genuine issue of material fact as to whether there was a causal relationship between Cuozzo's protected activity and the disciplinary charges pursued against him. As noted above, Warring admitted in the letter that he had been "instructed to do

14

whatever [he] had to do in order to send a message to Inmate Cuozzo and the population at large that the Administration was not going to tolerate any bullying efforts through the threats of accessing the courts against staff" and that he was advised of the need to convict Cuozzo "at any cost" due to Cuozzo's efforts to file civil lawsuits and have Warring arrested for petit larceny. Pl.'s Add'l Evid., ECF No. 81-1 at 2. Viewing the evidence in the light most favorable to Cuozzo, a reasonable factfinder could conclude that Cuozzo's protected activity substantially motivated the decision to issue and pursue disciplinary charges against him and that Warring would not have taken the same actions in the absence of Cuozzo's protected activity. Accordingly, Warring is not entitled to summary judgment on the retaliation claim asserted against him.

### B.    Sims

Cuozzo claims that Sims suspended his telephone privileges for 45 days in retaliation for filing the instant action against her and other prison officials. In moving for summary judgment on this claim, the defendants first argue that Cuozzo has failed to show that the loss of telephone privileges was sufficiently adverse to satisfy the second element of a retaliation claim, since he "continued to file grievances and litigate his cases, notwithstanding the temporary denial of telephone privileges." Defs.' Mem. Supp. Mot. Summ. J. 41. As explained above, however, "[a] plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness" from exercising First Amendment rights. Martin, 858 F.3d at 250 (internal quotation marks omitted). And although "a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a de minimis inconvenience to [his]

exercise of First Amendment rights," <u>Constantine</u>, 411 F.3d at 500 (internal quotation marks omitted), a reasonable factfinder could decide that the 45-day suspension of telephone privileges passes this threshold and constitutes an adverse action. <u>See, e.g.</u>, <u>Maben v. Thelen</u>, 887 F.3d 252, 266–67 (6th Cir. 2018) (holding that the loss of certain privileges for seven days, including the right to use the telephone, could be considered an adverse action in the prison context); <u>Kotler v. Bosco</u>, No. 9:17-cv-0394, 2020 WL 6128168, at *2 (N.D.N.Y. Oct. 19, 2020) (rejecting the defendants' argument that "the suspension of prepaid telephone privileges for 27 days is insufficient to support a First Amendment retaliation claim").

The defendants alternatively argue that Cuozzo has failed to establish a causal relationship "between Sims's alleged discovery of his lawsuit and the imposition of his phone restrictions." Defs.' Mem. Supp. Mot. Summ. J. 42. Once again, the court is unpersuaded. While Sims denies being "responsible for enforcing Cuozzo's telephone restrictions," <u>id.</u> Cuozzo has presented evidence indicating that Sims personally approved the 45-day suspension of telephone privileges on September 23, 2021, two days after having the opportunity to view the complaint filed in this action. This evidence, along with other evidence presented by Cuozzo, is sufficient to create a genuine factual issue as to whether there was a causal relationship between Cuozzo's protected activity and the suspension of his telephone privileges. <u>See</u> <u>Shaw</u>, 59 F.4th at 131 (concluding that the "extremely close temporal proximity" between an inmate's protected activity and an adverse action was sufficient to support an inference of causation); <u>Penley v. McDowell Cnty. Bd. of Educ.</u>, 876 F.3d 646, 656 (4th Cir. 2017) ("In retaliation cases, a causal connection may exist where [a defendant] takes adverse . . . action against [a plaintiff] shortly after learning of the protected activity.").

Therefore, the court concludes that Sims is not entitled to summary judgment on the retaliation claim asserted against her.

## II.    Due Process Claims

Cuozzo also claims that he was denied due process in connection with the disciplinary proceedings. In moving for summary judgment on the due process claims, the defendants argue that the claims are without merit and that they are entitled to qualified immunity. For the following reasons, the court concludes that the defendants are entitled to summary judgment on the due process claims.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "Without a protected liberty or property interest, there can be no federal procedural due process claim." Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007).

To the extent that Cuozzo claims that Warring violated his right to due process by filing false disciplinary charges against him, such claim is subject to dismissal. Although, as explained above, "a disciplinary charge may be actionable under § 1983 if retaliatory," Cole v. Holloway, 631 F. App'x 185, 186 (4th Cir. 2016) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989)), a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Consequently, "filing a false

disciplinary action standing alone does not establish a Fourteenth Amendment violation."
Johnson v. Zook, No. 1:22-cv-00920, 2023 WL 4873642, at *3 (E.D. Va. July 1, 2023) (internal
quotation marks omitted); see also Sprouse, 870 F.2d at 452 ("Sprouse's claims based on the
falsity of the charges . . . , standing alone, do not state constitutional claims.").

Cuozzo also appears to claim that he was denied due process during the two
proceedings in which he was found guilty of disciplinary offenses arising from the packages
intercepted on December 7, 2020, and December 10, 2020. In Wolff v. McDonnell, 418 U.S.
539 (1974), "the Supreme Court considered how prison disciplinary hearings must be
structured in order to comport with the demands of the Due Process Clause of the Fourteenth
Amendment." Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004). "The Supreme Court held
that in a disciplinary proceeding in which an inmate's liberty interests are at stake, government
officials must provide the inmate with written notice of the charges at least 24 hours before
the hearing as well as a written report after the hearing detailing the evidence relied upon and
the reasons for the disciplinary action." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019).
The Supreme Court "further recognized that, in such proceedings, an inmate has a qualified
right 'to call witnesses and present documentary evidence in his defense.'" Id. (quoting Wolff,
418 U.S. at 566).

The procedural protections outlined in Wolff apply only when a disciplinary action
implicates a protected liberty or property interest. See Bd. of Regents v. Roth, 408 U.S. 564,
570 (1972) ("The requirements of procedural due process apply only to the deprivation of
interests encompassed by the Fourteenth Amendment's protection of liberty and property.");
Wolff, 418 U.S. at 571 n.19 ("We do not suggest . . . that the procedures required by today's

decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). A liberty interest may arise from the Constitution itself or through state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To establish a state-created liberty interest, an inmate in Virginia must "point to a Virginia law or policy providing him with an expectation of avoiding the conditions of his confinement and demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life." Prieto, 780 F.3d at 249. Property interests "are not created by the Constitution." Roth, 408 U.S. at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id.

The penalties imposed for Cuozzo's disciplinary convictions included telephone and visitation restrictions for six months, a less favorable level for earning credit for good conduct, a review for the possibility of a security level increase, and $15.00 fines. Cuozzo also claims that he lost four years of earned good time credits and his prison job because of the disciplinary convictions.

The disciplinary penalties involving the temporary loss of telephone and visitation privileges do not implicate the protections afforded under the Due Process Clause, nor do those that resulted in a less favorable level for earning good time credits or a possible increase in security level. "Inmates do not have a protected liberty interest in avoiding penalties that involve a temporary loss of telephone usage and visitation." DeFour v. Webber, No. 7:22-cv-00379, 2023 WL 6149279, at *11 (W.D. Va. Sept. 20, 2023); see also Moone v. Woodson, No. 7:20-cv-000762, 2021 WL 5049770, at *2 (W.D. Va. Nov. 1, 2021), aff'd, No. 21-7691, 2022 WL 91095 (4th Cir. Mar. 29, 2022) (concluding that a 90-day loss of commissary and telephone

privileges did not implicate a protected liberty interest). Additionally, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," Wilkinson, 545 U.S. at 221, and "Virginia inmates have no . . . state-created right to be classified at a particular security level or to be housed in a specific penal institution," Carter v. Stith, No. 3:22-cv-00775, 2024 WL 477985, at *18 (E.D. Va. Feb. 7, 2024). Likewise, "it is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances." Id. (collecting cases). In addition, an inmate does "not have a constitutionally protected liberty or property interest in his prison job." Backus v. Ward, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. 1998); see also Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause.") (citing Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978)). Thus, to the extent that Cuozzo claims that any of the foregoing penalties were imposed without due process, such claim must be dismissed.

Although the loss of earned good time credits implicates a protected liberty interest, see Lennear, 937 F.3d at 268, any due process challenge associated with the loss of good time credits is also subject to dismissal. It is well settled that an inmate "may not challenge the validity of a disciplinary conviction [resulting in the loss of good time credits] through a damages suit under § 1983 . . . 'unless the plaintiff can demonstrate that the conviction . . . already has been invalidated.'" Moskos v. Hardee, 24 F.4th 289, 295 (4th Cir. 2022) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)). Here, as in Moskos, Cuozzo's allegations "necessarily imply the invalidity of the punishment imposed," and there is no evidence that

20

the disciplinary convictions which allegedly resulted in the loss of good time credits have been overturned or invalidated. Moskos, 24 F.4th at 296 (internal quotation marks omitted). Consequently, to the extent that Cuozzo claims that the defendants caused him to lose good time credits without due process, the claim "fails as a matter of law." Id.

The court also includes that qualified immunity bars any due process claim arising from the imposition of a $15.00 fine. "The defense of qualified immunity shields public officials from civil liability unless they violated a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Lewis v. Caraballo, 98 F.4th 521, 530 (4th Cir. 2024) (quoting Carroll v. Carman, 574 U.S. 13, 16 (2014)). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Carroll, 574 U.S. at 16 (internal quotation marks omitted). "In other words, existing precedent must have placed the constitutional question beyond debate." Id. (internal quotation marks omitted).

Although the Fourth Circuit recently made clear that an inmate "has a protected property interest in his prison trust account" and, thus, that he cannot be deprived of that interest without due process, Henderson v. Harmon, 102 F.4th 242, 248 (4th Cir. 2024), neither the Supreme Court nor the Fourth Circuit had held at the time of Cuozzo's disciplinary proceedings that the imposition of a small monetary fine for a prison disciplinary infraction implicated a liberty or property interest triggering procedural due process requirements. See DeFour, 2023 WL 6149279, at *31 ("Neither the Supreme Court nor the Fourth Circuit has specified the monetary threshold at which the Due Process Clause is implicated when it comes to fines against inmates for disciplinary infractions."). Indeed, "several judges in this district

have held that small fines routinely assessed at disciplinary hearings do not trigger federal due process protections." <u>Riddick v. Kegley</u>, No. 7:20-cv-00562, 2023 WL 2326858, at *5 (W.D. Mar. 2, 2023) (collecting cases where fines of $12.00 or $15.00 were found to not trigger the protections of the Due Process Clause); <u>see also</u> <u>Proctor v. Hamilton</u>, No. 1:19-cv-00275, 2021 WL 67353, at *3 (E.D. Va. Jan. 7, 2021) (concluding that "the $10.00 fine imposed upon plaintiff—whether viewed as a deprivation of liberty <u>or</u> property [did not] trigger the need for procedural due process protections"). And in 2019—two years before Cuozzo's fines were imposed—the Supreme Court of Virginia declined to decide whether a $10.00 fine implicated a constitutionally protected interest. <u>See</u> <u>Anderson v. Dillman</u>, 297 Va. 191, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on the issue and discussing the different rationales underlying the decisions). Because the issue of whether a $15.00 disciplinary penalty triggered particular procedural due process requirements was not beyond debate in 2021, the court concludes that the doctrine of qualified immunity bars any due process claim arising from the imposition of such penalty. <u>See</u> <u>DeFour</u>, 2023 WL 6149279, at *10 (concluding that the defendants were entitled to qualified immunity since it was not "clearly established on May 26, 2022, that [the plaintiff] was entitled to federally required procedural protections before receiving a disciplinary fine of $15").

For all of these reasons, the defendants' motion for summary judgment will be granted with respect to the due process claims asserted in the second amended complaint.

## <u>Conclusion</u>

For the reasons stated, the defendants' motion for summary judgment, ECF No. 69, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: September 25, 2024

Mike Urbanski
Senior U.S. District Judge
2024.09.25 09:40:04
-04'00'

Michael F. Urbanski
Senior United States District Judge