IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
January 15, 2026
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

WILLIAM JAY CUOZZO,      )
     Plaintiff,         )     Case No. 7:21-cv-00501
                    )
v.                   )
                    )     By: Michael F. Urbanski
CRAIG F. WARRING, et al.,    )     Senior United States District Judge
     Defendants.      )

## MEMORANDUM OPINION

Plaintiff William Jay Cuozzo, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. In April 2025, the case proceeded to a bench trial on Cuozzo's First Amendment claims of retaliation against defendants Craig F. Warring and H. R. Sims. Having carefully considered the evidence presented, the court issues this memorandum opinion setting forth its findings of fact and conclusions of law. For the reasons stated herein, the court will enter judgment in favor of the defendants.

## I.      Background

The events giving rise to this action occurred at Green Rock Correctional Center (Green Rock), where Cuozzo was previously incarcerated. During the time period at issue, Warring was an institutional investigator at Green Rock, and Sims was an inmate hearings officer.

In November and December 2020, staff in the mailroom at Green Rock intercepted suspicious packages purporting to contain legal mail. Each of the suspicious packages was found to contain Suboxone, a Schedule III controlled substance.

On April 1, 2021, following an investigation involving the Virginia Department of Corrections (VDOC) Special Investigations Unit (SIU), Warring issued four disciplinary offense reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband on four separate dates. In the reports, Warring alleged that packages containing Suboxone had been intercepted on November 16, 2020 (Case No. GROC-2020-2742), November 20, 2020 (Case No. GROC-2020-2743), December 7, 2020 (Case No. GROC-2020-2744), and December 10, 2020 (Case No. GROC-2020-2745). Three of the packages were addressed to other inmates, and the fourth package intercepted on December 10, 2020, was addressed to Cuozzo.

Sims conducted the disciplinary hearing for each charge on May 7, 2001. Based on the evidence and testimony presented at the hearings, Sims dismissed the charges stemming from the packages intercepted on November 16, 2020, and November 20, 2020. Sims found Cuozzo guilty of the charges stemming from the packages intercepted on December 7, 2020, and December 10, 2020.

Cuozzo maintains that all four disciplinary charges were false and that he was not involved with any of the packages described in the disciplinary offense reports. Cuozzo claims that Warring issued and pursued false disciplinary charges against him in retaliation for filing grievances and a criminal complaint against Warring for intercepting funds deposited into Cuozzo's inmate trust account.

After finding Cuozzo guilty in Case Nos. GROC-2020-2744 and GROC-2020-2745, Sims imposed a $15.00 fine in each case. Additionally, because the conviction in GROC-2020-2745 constituted Cuozzo's second conviction for the same Category I offense within one year,

Sims also imposed several enhanced penalties set forth in VDOC Operating Procedure (OP) 861.1, including no access to telephone calls for six months. In accordance with a memorandum issued by a VDOC administrator, Sims noted in her disciplinary decision that the six-month telephone restriction imposed in GROC-2020-2745 would not be enforced due to COVID-19.

On September 23, 2021, after the administrator's memorandum was rescinded, Sims suspended Cuozzo's telephone privileges for 45 days. Cuozzo claims that Sims did so in retaliation for filing this action. Cuozzo asserts that Sims became aware of the action on September 21, 2021, two days before his telephone privileges were suspended. On that date, according to Cuozzo, Sims was observed interacting with Cuozzo's counselor while the counselor was in possession of Cuozzo's original complaint, which named Sims as a defendant.

On October 3, 2022, Cuozzo filed a second amended complaint against Warring and Sims. Cuozzo claims that both defendants retaliated against him for engaging in activity protected by the First Amendment.

On December 6, 2022, Warring and Sims advised the court that Cuozzo had been indicted on related drug charges in the Circuit Court of Pittsylvania County, and they moved to stay further proceedings in this action until the conclusion of the criminal proceedings. That motion was granted on December 9, 2022.

Cuozzo proceeded to trial on the criminal charges on February 16, 2023. That same day, a jury found Cuozzo guilty of conspiracy to deliver drugs to an inmate and conspiracy to deliver a Schedule III controlled drug.

The court lifted the stay on August 11, 2023, and Warring and Sims subsequently moved for summary judgment. On September 25, 2024, the court denied the motion for summary judgment with respect to the claims of retaliation against Warring and Sims. The court found that Cuozzo had presented sufficient evidence to create a genuine factual dispute as to whether there was a causal relationship between his protected First Amendment activity and the adverse actions taken by Warring and Sims. In reaching its decision, the court relied in part on a letter that Warring purportedly wrote to VDOC Regional Administrator Carl Manis on September 7, 2021, which Cuozzo submitted as additional evidence in opposition to the defendants' motion for summary judgment. That letter, the authenticity of which was disputed at trial, is reproduced in full below:



## COMMONWEALTH of VIRGINIA

**Barry Kanode**
**Warden**

**Department of Corrections**
**Division of Institutional Services**
**Green Rock Correctional Center**

P.O. Box 1000
Chatham, VA 24531
(434) 797-2000

September 7, 2021

**PRIVILEGED COMMUNICATION**

Mr. Carl A. Manis

Regional Administrator

Western Regional Office

3313 Plantation Road NE

Roanoke, Virginia 24012

*RECEIVED*
*SEP 2 4 2021*
*Virginia Department of Corrections*
*Procurement – Western Region*

*ORIGINAL*

Re: GROC-2020-2744 & 2745

Dear Mr. Manis:

In response to your voice mail of this day, seeking an update and investigatory summary surrounding the Disciplinary Charges I placed on Inmate Cuozzo, No. 1121972; that are currently in your office on appeal, I offer:

On December 10, 2020, Investigator Alvis notified me that "legal mail" was received in the mailroom at Green Rock Correctional Center. Upon further examination of the exterior of the envelope the mailroom felt it was suspicious and Investigations took custody of the envelope. The envelope in question was proven to contain contraband/evidence, which no longer deemed it "legal mail". The envelope, attached, was purported to have been sent by Jane L. Brown, Clerk of the Circuit Court and was addressed to Inmate William Cuozzo, 1121972. The package, upon further examination, was found to have inside hidden compartments 18 Suboxone strips. There was no evidence that Inmate Cuozzo had any knowledge of that package nor any connection supporting that he was involved in the sending of the package, to himself.

I followed my steps of training and instructions from Warden Kanode to complete an investigation. This led me to several additional incoming "legal mail" packages alleged to have been sent from legal entities

1

and contained additional contraband. I was instructed to engage further in my investigations and to notify SIU with my findings.

During the course of my investigations, I was unable to identify Inmate Cuozzo as an actual primary offender suspect. What actually continued the investigations into Inmate Cuozzo's GTL & JPay activities was the fact a separate incoming package purported to be "legal mail" arrived addressed to Inmate Cuozzo containing pornographic photographs. From that, I initiated investigations into his actual telephone conversations; monitoring them.

I discovered that, on December 2, 2020, Inmate Cuozzo placed a telephone call to an individual I initially thought was a female. I later found that to not be the case. The conversation seemed to indicate Cuozzo's involvement in the smuggling operation, but that truly did not fit his character nor his modus operandi. I truly could not tie Cuozzo into the operation, even with the December 2nd telephone conversation; as it's obvious Inmate Cuozzo was in fact delivering a message to Inmate Calvin Spriggs' sister for Spriggs. The conclusion of that investigation was that the party Cuozzo was speaking with was the participating party who sent him the pornographic photographs.

Inmate Cuozzo's assertions within his disciplinary appeals are accurate. He was in fact attempting to have me arrested by way of submitting a Criminal Complaint form to the local Magistrate on multiple occasions claiming that I illegally removed funds from his Trust Account. In addition, he did in fact file multiple grievances against me for the opening of his incoming legal mail outside his presence; retaliation, and I believe petit larceny. Throughout all of these events I maintained my investigation position and constantly briefed the Warden and Assistant Warden at this facility.

I was instructed to "do whatever I had to do" in order to send a message to Inmate Cuozzo and the population at large that the Administration was not going to tolerate any bullying efforts through the threats of accessing the courts against staff for their efforts to maintain orderly operations of the facility. The directive came from Assistant Warden Coleman. I followed his directive.

I lodged four (4) Disciplinary Offense Reports against Inmate Cuozzo (GROC-2020-2742 thru 2745). All of these Reports charged Cuozzo with attempting to breach the security perimeter with contraband. At the hearings, the first two (2) Reports were dismissed; one as a result of his Due Process Rights being violated and the other as a result of insufficient evidence to support the Description of Offense. I asked that Inmate Cuozzo be excused for a brief consult with I.H.O. Sims and at that time I advised her of the need, per Assistant Warden Coleman, to convict Cuozzo at any cost due to the active pursuit he was engaged in to both have me arrested for petit larceny and, he is known for filing litigations in the courts. Subsequent to that conversation the hearings resumed and he was found guilty on the remaining two. So, he is correct in telling you that, what he referenced as a "behind the scenes conversation" between I.H.O. Sims and myself, took place.

2

I too have reviewed the Disciplinary Hearings in CORIS and I find the points within the hearings where he claims that I admitted there was no evidence to support the D.O.R.'s as submitted. I continue to maintain that position. There was no evidence to support Inmate Cuozzo participated in any scheme to introduce contraband into Green Rock Correctional Center. However, when I attempted to retract my Reports lodged against him, I was instructed to just "leave it alone" so I did just that.

The Internal Incident Reports have been turned over to SIU Agent Bennett for further handling. With the current outrage concerning the influx of illegal substances inside the facilities I feel the Department is compelled to satisfy any public outcry declaring the facilities are not doing their part. At this point, I have closed my investigations.

I hope that this assists you in the determination of the Level II Disciplinary Appeal review. Should you need any further input please notify the institution or contact me via departmental contact information.

Sincerely,

C. F. Warring

Investigations

cc: Barry Kanode, Warden

3

## II.    Testimony and Other Evidence

During the bench trial on April 1 and 2, 2025, the parties presented testimony and other evidence relevant to the merits of Cuozzo's claims of retaliation against Warring and Sims. The witnesses included Ms. Bailey, Cuozzo, Alisha Thacker, Wayne Hudson, Jacqueline Royal, Arnold Hamlett, Barry Kanode, Sherita Williams, Warring, and Sims.* The court will summarize the relevant testimony and evidence before making its findings of fact and conclusions of law.

### A.    Bailey

Cuozzo called Ms. Bailey as his first witness. Bailey testified that she is employed at the VDOC's Western Regional Office, where she works in the procurement department. Cuozzo showed her the letter purportedly written by Warring and asked her to describe the date stamp on the letter. Bailey testified that the letter contained the type of stamp that the Western Regional Office would use when it received a bid from a potential vendor or supplier. Since the letter did not fall within that category of documents, Bailey testified that it appeared that someone in the Western Regional Office may have picked up the wrong stamp by mistake. Bailey acknowledged, however, that she had not seen the letter prior to trial.

### B.    Cuozzo

Cuozzo testified next. He began by addressing the removal of funds deposited into his inmate trust account. On July 1, 2020, Cuozzo received a $50.00 donation from Alonza

---

* Prior to trial, Cuozzo filed a "motion in limine and to quash witnesses" in which he sought to exclude the testimony of several potential witnesses identified by the defendants, including Hudson, Royal, Hamlett, and Kanode. ECF No. 144. To the extent that motion remains pending, it will be denied. As reflected below, each of these witnesses had personal knowledge of evidence related to the disciplinary charges issued against Cuozzo.

George. George made the payment to Cuozzo's inmate account through JPay, Inc. (JPay), a private company that contracts with the VDOC to provide products and services to inmates. Pl's Ex. 1. That same day, the investigations department instructed the business office to remove the funds from Cuozzo's account and return them to JPay to be refunded to the sender. Pl.'s Exs. 2–4. Cuozzo subsequently filed an informal complaint and a regular grievance alleging that petit larceny had been committed and that he would be pursuing criminal charges. Pl.'s Exs. 5–8.

On October 27, 2020, Cuozzo received a $240.00 deposit through JPay from Sonya Mercier. Pl.'s Ex. 9. The funds were returned to JPay that same day. Id. On October 28, 2020, Cuozzo submitted an offender request to the investigations department inquiring about the removal of funds. Pl.'s Ex. 12. In response, defendant Warring informed Cuozzo that the funds were returned because Mercier was sending funds to multiple inmates. Id. Cuozzo subsequently filed a regular grievance against Warring on November 9, 2020, in which he accused Warring of petit larceny and alleged that funds had been illegally removed from his account. Pl's Ex. 17. Cuozzo testified that he also filed a criminal complaint against Warring during the same timeframe.

Several months later, on April 1, 2021, Warring issued four disciplinary offense reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband on four separate dates. In the first report, Case No. GROC-2020-2742, Warring provided the following description of the offense:

> On November 16, 2020, a package containing books with 22 bundles of suboxone taped to the pages was intercepted in the mailroom at Green Rock Correctional Center. The package was addressed to Inmate Derek Powell, #1512395. Pursuant to the

9

call Inmate W. [Cuozzo] is talking to a female. During the call Inmate W. [Cuozzo] tells the female that the next package should be for "Adrian" (Adrian Simmons). Through the call Inmate W. [Cuozzo] is talking in code to the female instructing her to send packages.

Pl.'s Ex. 23.

Defendant Sims conducted hearings on all four disciplinary charges on May 7, 2021.

Based on the evidence presented, defendant Sims dismissed the charge in Case No. GROC-2020-2742. She provided the following reason for her decision:

Based on the preponderance of the evidence, this charge was dismissed. Reporting Officer references "a call" by inmate Cuozzo of which he informs a female that the next package should be for "Adrian"; yet no date or time is mentioned of when this call is allegedly made. Transcripts of phone calls made on 12/2/2020 and 12/8/2020 were provided however, the Reporting Officer failed to establish the connection between the phone call made on 12/2/2020 and the package received on 11/16/2020.

Pl.'s Ex. 24.

In the second disciplinary offense report, Case No. GROC-2020-2743, Warring provided the following description of the offense:

On November 20, 2020, an envelope containing 5 bundles of suboxone concealed to the pages was intercepted in the mailroom at Green Rock Correctional Center. The package was addressed to Inmate Journy Snead, #1357051. On December 2, 2020, at or about 10:32 a.m., Inmate W. [Cuozzo], #1121972, placed a telephone call to (434) 229-1123. The duration of the call was 12 minutes and 54 seconds. Pursuant to the call Inmate W. [Cuozzo] is talking to a female. During the call Inmate W. [Cuozzo] tells the female that the next package should be for "Adrian" (Adrian Simmons). Throughout the call Inmate W. [Cuozzo] is talking in code to the female instructing her to send packages.

Pl.'s Ex. 25. Defendant Sims also dismissed this charge following a hearing on May 7, 2021.

She provided the following reason for her decision:

> Based on the preponderance of the evidence, this charge was dismissed. The Reporting Officer references a call made on 12/2/2020 of which inmate [Cuozzo] informs a female that the next package should be for "Adrian." The package of which inmate [Cuozzo] received this charge for has an offense date of 11/20/2020. Reporting Officer failed to establish the connection between the phone call made on 12/2/2020 and the package received on 11/20/2020.

Pl.'s Ex. 26.

In the third disciplinary offense report, Case No. GROC-2020-2744, Warring provided

the following description of the offense:

> On December 7, 2020, a package containing 33 bundles of Suboxone strips was intercepted in the mailroom. The package was addressed to Inmate Adrian Simmons, #1820246. On December 2, 2020, at our about 10:32 a.m., Inmate W. [Cuozzo], #1121972, placed a telephone call to (434) 229-1123. The duration of the call was 12 minutes and 54 seconds. Pursuant to the call Inmate W. [Cuozzo] is talking to a female. During the call Inmate W. [Cuozzo] tells the female that the next package should be for "Adrian" (Adrian Simmons). Throughout the call Inmate W. [Cuozzo] is talking in code to the female instructing her to send packages.

Pl.'s Ex. 27. Following a hearing on May 7, 2021, Sims found Cuozzo guilty of this offense

and imposed a fine of $15.00. Pl.'s Ex. 28.

Cuozzo introduced excerpts of the transcript from the disciplinary hearing in Case No.

GROC-2020-2744 as Plaintiff's Exhibits 31 and 32. When asked about the recorded telephone

call referenced in the disciplinary offense report, Warring acknowledged during the disciplinary

hearing that Cuozzo did not specifically instruct anyone to mail a package to "Adrian

Simmons." Pl.'s Ex. 32 (emphasis added). Instead, according to the transcript of the recorded

call, Cuozzo said "the last one would've went for Adrian," the first name of the inmate for

whom the mailroom subsequently received a package containing Suboxone strips. Id.

In the fourth disciplinary offense report, Case No. GROC-2020-2745, Warring

provided the following description of the offense:

> On December 10, 2020, a package disguised as legal mail was
> intercepted in the mailroom at Green Rock Correctional Center.
> The package was addressed to Inmate W. [Cuozzo], #1121972.
> The package contained 18 pieces of suboxone. Inmate W.
> [Cuozzo's] GTL and JPay activity showed his involvement in the
> packages coming into the institution.

Pl.'s Ex. 47. Following a hearing on May 7, 2021, Sims found Cuozzo guilty of this offense.

Pl.'s Ex. 75. In addition to a fine of $15.00, Sims imposed the following "mandatory enhanced

sanctions . . . for this 2nd Category I conviction of the same offense code":

 i.    No access to telephone calls for six months (not enforced
       due to COVID);

 ii.   Non-contact visits from immediate family only for 6
       months (5/7/2021 ends 11/7/2021);

 iii.  Good Time Class Level IV for one year; and

 iv.   Review for possibility of security level increase.

Id.

Cuozzo introduced excerpts of the transcript from the disciplinary hearing in Case No.

GROC-2020-2745 as Plaintiff's Exhibits 54 and 55. When asked about the recorded telephone

calls referenced in the disciplinary offense report, Warring acknowledged during the

disciplinary hearing that Cuozzo never specifically directed anyone to send him Suboxone

strips in the mail or to send him a package containing Suboxone strips. Pl.'s Ex. 55. He

emphasized that Cuozzo was "not gonna specifically say it." Id.

12

Cuozzo testified that on the morning of September 21, 2021, he met with his assigned counselor, Sherita Williams, to have 276 pages of legal documents copied for the purpose of filing this civil action under 42 U.S.C. § 1983, including the initial complaint that named Warring and Sims as defendants. That same day, he submitted a request to withdraw funds necessary to pay for the copies. Pl.'s Ex. 70. Because of the number of documents involved, Williams took the paperwork to another building to make the copies requested by Cuozzo. Cuozzo testified that Williams was talking to Sims when Williams returned to his housing unit with the copies and that Sims was clearly listed as a defendant on the cover page included with the documents.

Two days later, on September 23, 2021, Sims sent an email to three individuals that contained the following subject line: "Green Rock – Inmate Telephone Suspension Notification – 9/21/2021." Pl.'s Ex. 72. In the email, Sims requested that telephone usage be suspended "for the inmate(s) on the attached Telephone Suspension Notification [form]." Id. The form listed five inmates, including Cuozzo. Pl.'s Ex. 73. For Cuozzo, the form listed a suspension duration of six months that should start "now" and end on November, 7, 2021. Id.

At the time of Cuozzo's disciplinary hearings on May 7, 2021, Chief of Corrections Operations David Robinson had issued a memorandum suspending the imposition of telephone restrictions as a disciplinary penalty due to the COVID-19 pandemic. Pl.'s Ex. 74. The memorandum provided that "[n]o telephone restriction is to be imposed as a penalty under Operating Procedure 861.1, Inmate Discipline, until further notice." Id. From May 7,

2021, until September 23, 2021, Cuozzo had full access to a telephone and made more than 60 completed phone calls. Pl.'s Ex. 76.

On August 26, 2021, before Sims suspended Cuozzo's telephone privileges, Robinson issued a revised memorandum regarding inmate telephone restrictions. Pl.'s Ex. 77. In the revised memorandum, Robinson informed inmates that, effective immediately, "inmate telephone restrictions as available for penalty under Operating Procedure 861.1, Inmate Discipline, have been reinstated." Id. The memorandum did not specify whether telephone restrictions could be applied retroactively.

Cuozzo testified that he had been incarcerated for nearly 30 years and that he had not received any other disciplinary convictions during his entire period of incarceration. See Pl.'s Ex. 106 (listing the two disciplinary offenses for which he was convicted on May 7, 2021). As a result of the disciplinary convictions at issue in this case, Cuozzo's security level was increased and he was transferred to Sussex II State Prison.

On cross-examination, Cuozzo reasserted that Warring had falsely charged him with the disciplinary offenses at issue, two of which were dismissed by Sims. He acknowledged, however, that he was subsequently convicted in state court of conspiring to distribute a Schedule III controlled drug and conspiring to deliver drugs into a correctional facility.

Defense counsel asked Cuozzo to review transcripts of seven recorded telephone calls: (1) a call on November 30, 2020, between Cuozzo and Ricky McCray; (2) a second call on November 30, 2020, between Cuozzo and McCray; (3) a call on December 2, 2020, between Cuozzo and Sonya Mercier; (4) a call on December 2, 2020, between Cuozzo and McCray; (5) a call on December 2, 2020, between Cuozzo and Monique Spriggs; (6) another call on

December 2, 2020, between Cuozzo and McCray; and (7) a call on December 8, 2020, between Cuozzo and McCray. Cuozzo acknowledged that he was familiar with the telephone calls, and the transcripts were admitted as Defendants' Exhibit 2.

During the first call with McCray on November 30, 2020, Cuozzo referred to being "overcharged" for a "package" containing the "wrong package number." Defs.' Ex. 2. He also said that the "avenue" that he was using to help pay expenses was "tripping lately" and that he did not "know what game she's trying to play." Id. When questioned about this particular call, Cuozzo testified that he was expecting a package of books and that Sonya Mercier was supposed to have ordered him books for a dog program that he had started in prison.

During the second call with McCray on November 30, 2020, Cuozzo referred to potentially receiving something from McCray that was "in the same fashion as the other ones." Id. Cuozzo then said that he was "shying away" from the "avenue" that he had been using and that something would likely be sent to McCray's address. Id. Cuozzo indicated that he would try to send McCray a card, so that Cuozzo knew that no one was "listening." Id. When questioned about this particular call, Cuozzo said that he was referring to pornographic photographs that he was expecting from McCray. Cuozzo testified that McCray, who is now deceased, was the male cousin of Calvin Spriggs, another Green Rock inmate who introduced Cuozzo to McCray for a potential relationship. Cuozzo acknowledged that Calvin Spriggs's sister, Monique Spriggs, was helping Calvin obtain Suboxone strips. Although Cuozzo also spoke to Monique Spriggs by telephone, Cuozzo testified that his conversations had nothing to do with smuggling Suboxone strips into the prison and that he only wanted to receive pornographic pictures that could be sold to other inmates.

15

Defense counsel showed Cuozzo a handwritten letter addressed to McCray, which was introduced as Defendants' Exhibit 10. In the letter, Cuozzo indicated that McCray should be receiving money to help cover "postage expenses." Defs.' Ex. 10. He then described his "taste and/or preference" to include "young chocolate and brown boys." Id. He listed the types of pornographic photographs that he preferred and included a list of websites that he had previously received photographs from. Id. Cuozzo also included instructions for concealing and mailing items to the prison and noted that it was the same system used with "Calvin." Id. Cuozzo testified that he received the instructions from Calvin Spriggs and that he intended for McCray to follow the instructions when sending him pornographic pictures.

Defense counsel asked Cuozzo to review the transcript of his telephone call with McCray on December 2, 2020. During the call, McCray referred to sending "the most recent layaway to his sister," which McCray "assumed . . . was received and taken care of." Defs.' Ex. 2. Cuozzo then said that "[t]he last one that would've went is for Adrian[]" and that "she should take care of it since there's something in it for her." Id. When asked about this portion of the call, Cuozzo testified that Calvin Spriggs had asked him to convey a message to McCray involving the name Adrian and that he simply delivered that message.

Defense counsel then asked Cuozzo about his recorded telephone call with Monique Spriggs on December 2, 2020. During the call, Cuozzo indicated that Calvin Spriggs was "across the yard," which prevented them from speaking. Defs.' Ex. 2. Cuozzo asked Monique to let Calvin know that Cuozzo had received "a couple messages to get with him" and that if Calvin was "trying to send a message about some more backpacks he needs to be clear as to what he needs." Id. When questioned about this portion of the call, Cuozzo testified that he

was oblivious at the time as to what Calvin was talking about and that he believed that Calvin was working on getting backpacks for his nieces and nephews to use for school.

During the December 8, 2020, recorded call with McCray, Cuozzo and McCray discussed the fact that Cuozzo had not yet received a package that McCray had mailed several days earlier. Defs.' Ex. 2. Cuozzo mentioned that he had "talked to one of cousin's partners" who said that "they had two things that were supposed to come that they were looking for." Id. When questioned about this call at trial, Cuozzo testified that he was expecting to receive a package containing pornographic pictures that was ultimately intercepted at Green Rock and that he and McCray never discussed anything concerning drugs.

Defense counsel then had Cuozzo confirm that he spoke to SIU investigators while the Suboxone investigation was being conducted. When asked if he denied receiving pornographic photographs from McCray during his discussion with investigators, Cuozzo testified that the photographs were intercepted and, thus, that he did not in fact receive them.

Defense counsel then showed Cuozzo several emails that he sent to McCray using the electronic message system offered to inmates through JPay. In one of the emails, Cuozzo indicated that he "may have picked up another task to do here within the next 7–10 days similar to what [he does] for [cousin]." Defs.' Ex. 13. Cuozzo testified that he was referring to a task involving photographs and that Calvin Spriggs had begun to receive orders for specific types of photographs. Cuozzo testified that he and Calvin had discussed trying to make some money together while quarantined during the COVID-19 pandemic but that he was focused solely on obtaining pornographic pictures to sell to other inmates.

17

## C.    Thacker

Cuozzo's next witness, Alisha Thacker, appeared remotely via Zoom. Thacker met Cuozzo while working as the grievance coordinator at Sussex II State Prison. Cuozzo showed Thacker the three-page letter allegedly written by Warring, along with an accompanying cover letter signed by Thacker. In the cover letter, Thacker apologized for holding Cuozzo's original documents and noted that the original documents and additional receipts were attached. Thacker explained that the grievance department made copies of documents submitted by inmates and then returned the original documents. Thacker testified that the three-page letter allegedly written by Warring was provided to the grievance department by Cuozzo and that she simply returned it to him when she discovered that she still had the original document. Thacker acknowledged that she could not testify as to whether the letter was actually written by Warring.

## D.    Hudson

The defendants called Wayne Hudson as their first witness. Hudson worked in the mailroom at Green Rock in November and December 2020. Defense counsel showed Hudson an envelope addressed to Derek Powell that the mailroom received on November 16, 2020. See Defs.' Ex. 17. Hudson pointed out a few things that stood out to him about the envelope. Although the envelope was purportedly mailed by a Virginia circuit court, the return address label appeared to be taped on the envelope, and it contained a priority mail label added by a post office. Hudson testified that a court's address is typically typed or preprinted directly on an envelope and that courts ordinarily use a postage meter to print postage for mail and packages. Hudson also testified that Powell's name and address were handwritten in a manner

18

that matched mail addressed to other inmates. Because the envelope appeared suspicious, he palpated it with his hands and determined that it contained more than paper. Consequently, the envelope was turned over to the investigations department for further review.

Defense counsel then showed Hudson an envelope addressed to Journy Snead that the mailroom received on November 20, 2020. See Defs.' Ex. 18. Hudson noted that the handwriting on the envelope was similar to that on the envelope addressed to Derek Powell. Although the envelope was purportedly mailed by a state court, the return address label was not preprinted, and it contained a priority mail label rather than metered postage. After palpating and x-raying the envelope, the mailroom staff turned it over to the investigations department.

### E.    Royal

Jacqueline Royal also worked in the mailroom at Green Rock in November and December 2020. Defense counsel showed Royal an envelope address to Adrian Simmons that the mailroom received on December 7, 2020. See Defs.' Exs. 19, 20. Royal pointed out a few things that stood out to her about the envelope. Although the envelope was purportedly mailed by the Supreme Court of Virginia, it did not contain a preprinted return address. Instead, a return address label was taped on the envelope. Royal also noted that the envelope contained a priority mail label with a tracking number, which she testified was uncommon for legal entities. When asked if she recognized the handwriting used for Simmons's name and address, Royal testified that it appeared to be similar to Cuozzo's handwriting. After examining the envelope, Royal palpated it with her fingers and felt a lumpy section within the envelope.

She then ran it through an x-ray machine and turned it over to Arnold Hamlett in the investigations department.

Defense counsel then showed Royal an envelope addressed to Cuozzo that the mailroom received on December 10, 2020. See Defs.' Exs. 21, 22. Although the envelope was purportedly mailed by the Clerk of the Nottoway County Circuit Court, the return address label had been taped on the envelope, as had the label containing Cuozzo's name and address. Additionally, the postage label indicated that it had been mailed from Lynchburg, Virginia, rather than Nottoway County. After feeling a lump in the envelope, Royal ran the envelope through an x-ray machine and turned it over to Arnold Hamlett.

## F.    Arnold Hamlett

Arnold Hamlett was employed as an intelligence officer at Green Rock in November and December 2020. Hamlett testified that he retrieved the suspicious envelope that the mailroom received on November 16, 2020. After running the envelope through an x-ray machine and seeing items concealed in the enclosed paperwork, Hamlett opened the envelope and found what he believed to be individually-wrapped Suboxone strips. The evidence was submitted to the Virginia Department of Forensic Science for testing, which confirmed that the strips contained Suboxone.

Hamlett testified that he was also working on November 20, 2020, when Warring picked up another suspicious envelope from the mailroom. Hamlett observed Warring run the envelope through the x-ray machine and remove individually-wrapped strips from the envelope. The evidence was submitted to the Department of Forensic Science for testing, which confirmed that the strips contained Suboxone.

Hamlett testified that he took the same actions after being notified about the suspicious envelopes that the mailroom received on December 7, 2020, and December 10, 2020. He x-rayed the envelopes and inspected their contents, which included plastic-wrapped bundles of rectangular strips. Hamlett testified that he submitted the evidence to the Department of Forensic Science for testing and that the lab confirmed that the strips contained Suboxone.

Hamlett testified that the suspicious packages were referred to the SIU's drug task force for further investigation. The SIU oversaw the investigative process and, at times, requested assistance from Hamlett. For instance, Hamlett assisted the SIU with reviewing recorded phone calls from Green Rock. During the course of listening to the recorded calls, Hamlett identified Cuozzo as a person of interest. Cuozzo ultimately became a subject of the SIU's investigation.

**G.    Barry Kanode**

Barry Kanode is a retired VDOC official who served as the warden of Green Rock during the relevant time period. After being made aware of the packages intercepted at the facility, Kanode instructed the institutional investigators to refer the matter to the drug task force for further investigation. Upon the completion of the investigation, Kanode received an SIU report related to each of the four packages intercepted in November and December 2020. See Defs.' Exs. 23–26. After receiving the SIU reports, Kanode contacted Warring to discuss potential disciplinary charges against Cuozzo, and they determined that disciplinary charges were warranted. Kanode testified that he believed that there was sufficient evidence to connect Cuozzo to each of the mailings.

21

Defense counsel showed Kanode the letter that Warring purportedly drafted to Carl Manis regarding Cuozzo's disciplinary charges. Kanode testified that he saw the letter for the first time in preparation for trial and that he never received a copy while he was still employed by the VDOC. Kanode testified that he had no knowledge of the information contained in the letter, and he denied ever allowing an investigator under his supervision to pursue charges against an inmate that the investigator believed to be false.

## H.    Sharita Williams

Sharita Williams is a casework counselor. She held the same position at Green Rock in September 2021. As part of her duties, Williams makes copies of legal documents for inmates. Williams testified that she recalled making copies of legal documents for Cuozzo but that she was unaware of the contents of the legal documents. Williams denied discussing the contents of Cuozzo's legal documents with defendant Sims or showing Sims any of Cuozzo's legal documents. Williams further testified that she ordinarily transported documents in a folder and that she did not believe that it would have been possible for Sims to have read the documents that were copied for Cuozzo on September 21, 2021.

## I.    Warring

Defendant Warring currently works as a building commander at Green Rock. He previously held the position of institutional investigator. In that position, Warring was responsible for investigating events that occurred at the institution. He also assisted the SIU.

Defense counsel asked Warring a series of questions regarding the removal of funds from Cuozzo's inmate account. Warring testified that he did not specifically recall being involved in the initial decision to return the funds that Cuozzo received from Alonza George

and Sonia Mercier. However, he explained that the investigations office was tasked with determining whether individuals were sending money to multiple inmates. In such cases, the investigations office would notify the business office, and the business office would either place a hold on the funds or send them back.

Warring testified that he vaguely recalled having a conversation with Cuozzo during which Cuozzo complained about money being removed from his inmate account. Warring testified that he attempted to explain why the money had been removed and that Cuozzo was not satisfied with the explanation. Warring also acknowledged that he responded to the request forms admitted as Plaintiff's Exhibits 12 and 13, in which Warring informed Cuozzo that Sonya Mercier was sending funds to multiple inmates. After being shown several grievances filed by Cuozzo, Warring denied being upset by any grievance or complaint that Cuozzo filed against him.

Defense counsel then asked Warring about the four packages that were intercepted in November and December 2020. Warring testified that mailroom personnel were the first to identify the packages as suspicious and that they brought the packages to the attention of the investigations office. Warring testified that he was responsible for contacting SIU about the packages. Once the SIU became involved, SIU Investigator Matthew Bennett supervised the investigation. Warring testified that he did not participate in any witness interviews conducted by the SIU or identify Cuozzo as a person of interest. After the SIU investigation concluded, Warring was notified of the findings made with respect to each of the intercepted packages.

The SIU report for the November 16, 2020, package addressed to Derek Powell was admitted as Defendants' Exhibit 23. The report identifies several subjects of the investigation,

including Powell, Cuozzo, Donchevelle Jones, Calvin Spriggs, Monique Spriggs, Shanqua

Reaves, and Ricky McCray. The "synopsis" section of the report includes the following

paragraph summarizing the evidence against Cuozzo:

> Cuozzo's GTL and JPay activity showed his involvement in the
> packages coming into the institution. Cuozzo even says on a call
> on 12/2 that the next package coming should be for Adrian
> (Simmons). Cuozzo also talks to a Monique Spriggs and asks if
> Calvin was trying to get in touch with him. Further investigation
> shows that Inmate Calvin Spriggs 1189319 talks to his sisters
> Monique Spriggs and Shanqua Reeves during the month of
> November on multiple occasions and discusses packages, money,
> betting and what to put in each package. There are even merged
> calls with Inmate Donchevelle Jones #1549106 discussing the
> packages. Jones AKA "Don" tells Shanqua Reaves on November
> 9, 2020 to wrap ten in each pack so it's easier to count. Cuozzo
> also talks to a Richard "Ricky" McCray about sending in a
> package of nude male photos in late November (package was
> intercepted at Green Rock). Cuozzo talks about having sent the
> package to Ricky and Ricky just needs to put the items in the
> package and send it back. Cuozzo also talks about waiting on the
> package from Ricky's sister (Reaves) in the phone calls. Cuozzo
> on a call to Ricky on December 2, 2020 says that the next package
> should be to Adrian.

Defs.' Ex. 23 at 4–5. The report indicates that Bennett interviewed Cuozzo by telephone on

February 17, 2021, and that Cuozzo denied ever making packages to be sent back with drugs.

Id. at 6. The report also indicates that Cuozzo denied knowing anyone named Adrian or being

involved in "any conspiracies to get in drugs or porn pictures," but admitted that the packages

may contain his handwriting. Id. The report includes a summary of an investigative interview

conducted of Ricky McCray. According to the report, McCray admitted to receiving a package

addressed as legal mail from Cuozzo that contained directions on how to conceal

pornographic images to be sent back to him to Green Rock. Id. at 5. McCray also admitted

that he had mailed a package to Cuozzo that contained pornographic images. Id.

The final page of the SIU report consists of a March 31, 2021, letter that Warden Kanode sent to regional administrators in response to the SIU's findings. Id. at 95. In the letter, Kanode reported that the matter had been forwarded to the Pittsylvania County Commonwealth's Attorney's Office for possible prosecution and that "all inmates involved can now be charged administratively with 'Conspiracy to Possess Unauthorized or Un-prescribed Drugs.'" Id.

Warring testified that he reviewed each of the SIU reports with Warden Kanode and that he relied on the reports in issuing disciplinary charges against Cuozzo. When asked why he specifically chose to pursue charges against Cuozzo, Warring testified that his review of the SIU report indicated that Cuozzo was instrumental in trying to bring contraband into the facility. Although Kanode's letter specifically mentioned a drug conspiracy charge, Warring elected to charge Cuozzo with breaching or attempting to breach the security perimeter with contraband. Although Warring initially could not recall whether he personally pursued disciplinary charges against any of the other identified inmates, the defendants introduced evidence indicating that Warring charged Calvin Spriggs and Donchevelle Jones with the same disciplinary offense based on the package intercepted on November 16, 2020. See Defs.' Exs. 39, 41.

The SIU report for the November 20, 2020, package addressed to Journy Snead was admitted as Defendants' Exhibit 24. The SIU report for the December 7, 2020, package addressed to Adrian Simmons was admitted as Defendants' Exhibit 25. The SIU report for the December 10, 2020, package addressed to Cuozzo was admitted as Defendants' Exhibit 26. The "synopsis" section of each report contains the same paragraph quoted above

25

summarizing Cuozzo's GTL and JPay activity. See Defs.' Ex. 24 at 5; Defs.' Ex. 25 at 4–5;

Defs.' Ex. 26 at 3. The SIU report for the package addressed to Cuozzo also includes additional

information linking Cuozzo to other packages:

> Upon looking at the package that Cuozzo had sent to McCray,
> the first thing that stood out was the circles used to dot all the I's
> in the letter in the package like on the previous handwritten
> addresses on the packages. The directions to fill the voids were
> the same type voids also used in all the contraband packages.
> Cuozzo also included another smaller package with a void in
> religious materials with the return address cut out and taped on
> that package as well. Cuozzo also includes the photocopy of a
> legal mail envelope that he received on October 20, 2020. The
> return address is already cut off of the photocopy and a check of
> the legal mail log shows it was from "Heidi Barshinger, Clerk
> Henrico County Circuit Court." That is the same return address
> cut out as was taped to the first intercepted package [addressed
> to Derek Powell].

Defs.' Ex. 26 at 4.

Cuozzo is the only inmate named as a subject in all four SIU reports. Warring testified

that he issued each of the four disciplinary charges against Cuozzo based on the information

contained in the SIU reports. Warring denied charging Cuozzo with disciplinary offenses for

any reason relating to the complaints that Cuozzo filed against him.

Defense counsel showed Warring the letter that was purportedly written to Carl Manis

regarding Cuozzo's disciplinary charges. Although Warring acknowledged that the letter

appeared to contain his signature, he vehemently denied writing or signing the letter. Warring

also denied participating in any of the conversations described in the letter. When asked if staff

signatures are included with paperwork provided to inmates, Warring responded in the

affirmative. Warring also testified that he did not recognize the letterhead at the top of the

letter and that his investigations office had nothing to do with procurement. On cross-

examination, Cuozzo pointed out that the letterhead matched the letterhead used on Warden Kanode's decision to uphold Cuozzo's disciplinary conviction in Case No. GROC-2020-2745. See Defs.' Ex. 30 at VDOC 052–054.

In response to questions from Cuozzo regarding the disciplinary offense reports issued against him, Warring testified that he wrote the reports based on the information contained in the SIU reports. Warring further testified that the results of the SIU investigation indicated to him that Cuozzo participated in asking or directing others to forward packages to inmates at Green Rock and that he believed that the lead SIU investigator, Matthew Bennett, had reached the same decision.

Cuozzo requested that the court consider testimony elicited from Warring and Bennett at the state criminal trial. The entire criminal trial transcript was admitted as Defendants' Exhibit 31, and the court advised the parties that it would consider the testimony of Warring and Bennett. Cuozzo directed Warring's attention to the portion of the criminal trial during which Cuozzo, who proceeded pro se, asked Warring whether he discovered any evidence during the course of his investigation that specifically linked Cuozzo to the package addressed to Journy Snead. Warring responded, "Not in my investigation, no." Defs.' Ex. 31 at 215. In response to further questions, Warring explained that the information that his office obtained was turned over to the SIU and that the SIU conducted its own investigation. Id. at 216.

Cuozzo then highlighted the portion of the criminal trial during which he cross-examined Bennett. Cuozzo asked Bennett whether he could point to any recorded telephone calls or written communications in which Cuozzo "flat out direct[ed]" anyone to send drugs through the mail, and Bennett responded in the negative. Id. at 287. In response to further

27

questions, Bennett explained that individuals typically use "coded language" when discussing efforts to smuggle drugs into prisons. Id. at 290. For instance, Bennett testified that his investigation revealed that Cuozzo and others used the term "backpacks" to refer to the voids or pockets in which Suboxone and other contraband was mailed to inmates at Green Rock. Id. at 272.

After asking Warring about Bennett's trial testimony, Cuozzo had Warring confirm that Cuozzo pursued criminal charges against him for having funds removed from Cuozzo's inmate account. Warring testified that Cuozzo's efforts to pursue criminal charges against him had nothing to do with the disciplinary offense reports that he filed against Cuozzo. Warring testified that he did not pursue the disciplinary charges until after he talked to the warden and received the SIU reports.

## J.    Sims

Defendant H. R. Sims was the hearings officer for the four disciplinary charges filed against Cuozzo. Sims testified that she dismissed the charge in Case No. GROC-2020-2742 because she was unable to establish a connection between the phone call mentioned in the disciplinary offense report, which was made on December 2, 2020, and the package received on November 16, 2020. Sims testified that she dismissed the charge in Case No. GROC-2020-2743 because she was unable to establish a connection between the call made on December 2, 2020, and the package received on November 20, 2020. In response to further questions from defense counsel, Sims testified that there was no evidence suggesting that Warring acted in bad faith in bringing the charges or did not personally believe that the charges were warranted.

28

With respect to the charge in Case No. GROC-2020-2744, which involved the December 7, 2020, mailing addressed to Adrian Simmons, Sims testified that she determined that there was sufficient evidence to find Cuozzo guilty of that charge. Sims further testified that there was no evidence suggested that Warring acted in bad faith in bringing the charge or pursued the charge as an act of retaliation against Cuozzo.

With respect to the charge in Case No. GROC-2020-2745, which involved the December 10, 2020, package addressed to Cuozzo, Sims testified that she determined that there was sufficient evidence to find Cuozzo guilty of that charge. Once again, Sims testified that she had no reason to believe that Warring acted in bad faith in bringing the charge or pursued the charge as an act of retaliation against Cuozzo.

Sims testified that she imposed a $15.00 institutional fine for both charges for which Cuozzo was found guilty and that she also imposed mandatory enhanced sanctions for the second of those two charges. Although the mandatory enhanced sanctions included no access to telephone calls for six months, Sims testified that she did not enforce that sanction at the time of Cuozzo's disciplinary conviction based on the memorandum issued by David Robinson, which prohibited telephone restrictions from being imposed as a penalty during the COVID-19 pandemic.

On August 26, 2021, Robinson issued the revised memorandum that "rescinded" the previous memorandum and indicated that "inmate telephone restrictions as available for penalty under Operating Procedure 861.1, Inmate Discipline, have been reinstated." Defs.' Ex. 37.  When asked about the revised memorandum, Sims testified that it was the source of confusion in disciplinary cases involving mandatory enhanced penalties and that a meeting

was ultimately held to provide clarification on how the revised memorandum applied in such cases. Based on the information provided during the meeting, Sims understood that hearings officers were allowed to impose the remaining time of a telephone restriction imposed as a mandatory enhanced sanction. Consequently, after the meeting, Sims took steps to reinstate phone restrictions that had previously not been enforced during the pandemic.

On September 23, 2021, Sims sent Global Tel*Link (GTL) an Offender Telephone Suspension Notification form requesting that GTL suspend telephone privileges for five inmates, including Cuozzo. Defs.' Ex. 43. For Cuozzo, Sims indicated that the suspension would end on November 7, 2021, six months after the May 7, 2021, conviction for which Sims imposed mandatory enhanced penalties.

Sims testified that she treated all five inmates listed on the suspension form in the same manner. She denied reinstating Cuozzo's telephone restriction because of any lawsuit filed against her. She also denied seeing or reading any litigation documents copied by Cuozzo's counselor on September 21, 2021.

Defense counsel then had Sims review disciplinary offense reports filed against Calvin Spriggs and Donchevelle Jones. Sims confirmed that Warring also charged Spriggs and Jones with attempting to breach the security perimeter with contraband—the same offense with which Cuozzo was charged.

At the conclusion of the testimonial evidence, the defendants submitted one final exhibit as Defendants' Exhibit 44. The exhibit was a letter that Cuozzo wrote to the court on May 29, 2024, in which he requested that the court consider the letter allegedly drafted by Warring on September 7, 2021. Cuozzo indicated that he had discovered the letter "quite by

accident" while reviewing documents forwarded to him at Sussex II State Prison. Defs.' Ex. 44.

## III.    Standard of Review

"In a nonjury civil case, a [plaintiff] must satisfy the district court that the truth of each element of his claim has been demonstrated by a preponderance of the evidence." Fenton v. Freedman, 748 F.2d 1358, 1361 (9th Cir. 1984). "[A] party proves a fact by a preponderance of the evidence when he proves that the fact's existence is more likely than not." Doe v. Princeton Univ., 30 F.4th 335, 347 (3d Cir. 2022). In determining whether a party has met this burden in a civil case tried without a jury, the "court alone determines the credibility of the witnesses, and the weight to be attached to their testimony." Fenton, 748 F.2d at 1361. The court is responsible for "finding the facts, weighing the evidence, and choosing from among conflicting inferences and conclusions those which [it] considers most reasonable." Select Auto Imps., Inc. v. Yates Select Auto Sales, LLC, 195 F. Supp. 3d 818, 823 (E.D. Va. 2016).

Pursuant to Federal Rule of Civil Procedure 52, the court is required to make specific findings of fact and separately state its conclusions of law. "The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). The court "must do more than announce statements of ultimate fact," United States ex rel. Belcon, Inc. v. Sherman Constr. Co., 800 F.2d 1321, 1324 (4th Cir. 1986), but is not required "to make findings on all facts presented or to make detailed evidentiary findings." Darter v. Greenville Cmty. Hotel Corp., 301 F.2d 70, 75 (4th Cir. 1962). "The ultimate test as to the adequacy of findings will

always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence." Id.

## IV.    Findings of Fact

The court has carefully considered the trial testimony and the exhibits admitted at trial. While some of the facts relevant to Cuozzo's claims of retaliation against Warring and Sims are undisputed, other facts require the court to make credibility assessments. In deciding whether to credit all or part of a witness's testimony, the court has considered several factors, including whether the testimony is consistent with other evidence, whether a witness has made inconsistent statements on a material issue of fact, and the witness's demeanor, background, and experience.

### A.    Factual Findings Relevant to Cuozzo's Claim Against Warring

Turning first to the claim of retaliation against Warring, the court begins by emphasizing, as it did during trial, that it is entirely unnecessary for the court to determine whether Cuozzo, in fact, committed the conduct with which he was charged in the four disciplinary offense reports issued by Warring, or whether the evidence supported the related criminal offenses of which Cuozzo was convicted. Instead, the court need only determine whether Warring pursued disciplinary charges against Cuozzo in retaliation for engaging in conduct protected by the First Amendment. Based on the testimony and other evidence presented, the court is unable to find that the disciplinary proceedings were causally connected to any complaint or grievance pursued by Cuozzo. Instead, the court finds that Warring honestly believed that each of the disciplinary charges was warranted based on the information

contained in the SIU reports and that Warring would have taken the same actions even if Cuozzo had not filed complaints and grievances against him.

In reaching this decision, the court notes that it is undisputed that Warring did not issue the disciplinary offense reports against Cuozzo until after the SIU had completed its investigation regarding the packages intercepted at Green Rock and the applicable SIU reports had been sent to Warden Kanode. By the time the disciplinary offense reports were issued on April 1, 2021, several months had passed since Cuozzo filed the complaints and grievances accusing Warring of improperly removing funds from his inmate account. The court credits Warring's testimony that he reviewed each of the SIU reports with Kanode and that he relied on the reports in issuing the four disciplinary offense reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband on four separate dates. Although Kanode had previously recommended that Cuozzo and other inmates be charged administratively with the offense of conspiring to possess unauthorized drugs, Kanode testified that he believed that there was sufficient evidence to connect Cuozzo to each of the four intercepted packages that contained Suboxone. Cuozzo was the only inmate named as a subject in all four SIU reports, and each report indicated that "Cuozzo's GTL and JPay activity showed his involvement in the packages coming into the institution." Defs.' Ex. 23 at 4; Defs.' Ex. 24 at 5; Defs.' Ex. 25 at 4; Defs.' Ex. 26 at 3. The SIU reports highlighted several recorded telephone calls, including the recorded call on December 2, 2020, during which Cuozzo said that the next package arriving should be for Adrian, the first name of the inmate for whom the mailroom subsequently received a package containing Suboxone strips, and Warring included information from the SIU reports in each of the disciplinary offense

33

reports. The mere fact that Sims found the December 2, 2020, recorded call to be insufficient to connect Cuozzo to the two packages received prior to that date does not undermine the credibility of Warring's testimony that he wrote the disciplinary offense reports based on the information obtained by the SIU and that the results of the SIU investigation indicated to him that Cuozzo participated in asking or directing others to forward packages to Green Rock inmates that contained Suboxone. Regardless of whether Cuozzo only hoped or intended to receive packages containing pornographic images, Warring could have reasonably suspected from the totality of the information contained in the SIU reports that Cuozzo was involved with the packages containing Suboxone. Additionally, it is undisputed that Warring also charged Calvin Spriggs and Donchevelle Jones with attempting to breach the security perimeter with contraband—the same offense with which Cuozzo was charged.

The court also credits Warring's testimony that he did not write the letter to Carl Manis containing his signature. Likewise, the court credits Kanode's testimony that he never saw a copy of the letter while he was still employed by the VDOC and had no knowledge of its contents. Although the letter includes an official letterhead and appears to contain Warring's signature, it is entirely possible that other documents containing the same letterhead and/or signature were used to create the letter submitted by Cuozzo, and Cuozzo provided no plausible explanation for how he accidentally discovered the letter while reviewing documents at Sussex II State Prison. Additionally, neither of the two witnesses that Cuozzo called to offer testimony regarding the letter had personal knowledge of its authenticity. Bailey acknowledged that she had not seen the letter prior to trial and Thacker acknowledged that she could not testify as to whether the letter was actually written by Warring. Thus, Cuozzo failed to establish

the authenticity of the letter purportedly written by Warring, and the court declines to credit the contents of the letter.

Based on the testimony and evidence at trial and the court's credibility assessments, the court makes the following findings of fact relevant to the merits of Cuozzo's claim of retaliation against Warring:

1.  At the time of the events giving rise to this action, Cuozzo was incarcerated at Green Rock, where Warring worked as an institutional investigator.

2.  In October and November 2020, Cuozzo filed administrative grievances and a criminal complaint against Warring accusing him of improperly removing funds from his inmate account.

3.  On November 16, 2020, the mailroom at Green Rock received an envelope addressed to Derek Powell that was purportedly mailed by a Virginia circuit court. Because the envelope appeared suspicious, it was turned over to the investigations department for further review. Laboratory testing confirmed that strips found to be concealed in the envelope contained Suboxone.

4.  On November 20, 2020, the mailroom at Green Rock received an envelope addressed to Journy Snead that was purportedly mailed by a state court. Because the envelope appeared suspicious, mailroom staff turned it over the investigations department for review. The package was found to contain individually-wrapped strips that testified positive for Suboxone.

5.  On December 7, 2020, the mailroom received an envelope addressed to Adrian Simmons that was purportedly mailed by the Supreme Court of Virginia.

Because the envelope appeared suspicious, mailroom staff ran it through an x-ray machine and turned it over to the investigations department for review. The contents of the envelope included bundles of rectangular strips, which were found to contain Suboxone.

6.     On December 10, 2020, the mailroom received an envelope addressed to Cuozzo that was purportedly mailed by the Clerk of the Nottoway County Circuit Court. Because the envelope appeared suspicious, mailroom staff ran the envelope through an x-ray machine and turned it over to the investigations department for review. The contents of the envelope included bundles of rectangular strips, which were found to contain Suboxone.

7.     The packages were referred to the SIU's drug task force for further investigation. The investigation included a review of recorded telephone calls and email messages sent by inmates at Green Rock. According to SIU reports authored by Special Agent Matthew Bennett, the SIU determined that Cuozzo's telephone and email activity established his involvement in the packages being sent to Green Rock. The SIU reports identified Cuozzo as a subject with respect to all four packages.

8.     After receiving the SIU reports in late March 2021, Warden Kanode contacted Warring to discuss potential disciplinary charges against Cuozzo, and they determined that disciplinary charges were warranted. Both Kanode and Warring believed that there was sufficient evidence to connect Cuozzo to each of the packages found to contain Suboxone.

36

9.    On April 1, 2021, Warring issued four disciplinary reports against Cuozzo, which charged him with breaching or attempting to breach the security perimeter with contraband on November 16, 2020 (Case No. GROC-2020-2742), November 20, 2020 (Case No. GROC-2020-2743), December 7, 2020 (Case No. GROC-2020-2744), and December 10, 2020 (Case No. GROC-2020-2745). Warring relied on the SIU reports in preparing the disciplinary offense reports, and he specifically referenced information contained in the SIU reports.

10.    Based on the evidence presented at the disciplinary hearings, Sims found Cuozzo guilty of the charges stemming from the package intercepted on December 7, 2020, which was addressed to Adrian Simmons, and the package intercepted on December 10, 2020, which was addressed to Cuozzo. However, Sims dismissed the charges against Cuozzo stemming from the packages intercepted on November 17, 2020, and November 20, 2020, finding that the recorded call cited in the disciplinary offense reports was insufficient to connect Cuozzo to those particular packages.

11.    Cuozzo was not the only inmate charged with a disciplinary offense as a result of the packages intercepted by mailroom staff. Warring also charged two other inmates with committing the same disciplinary offense.

12.    Warring did not file the disciplinary offense reports against Cuozzo in retaliation for the grievances and complaints that Cuozzo lodged against him. Cuozzo honestly and reasonably believed that the charges were supported by the information contained in the SIU reports, and the court finds that he would

have taken the same actions even if Cuozzo had not filed grievances and complaints against him.

**B.    Factual Findings Relevant to Cuozzo's Claim Against Sims**

The court turns now to the testimony and evidence presented at trial relating to Cuozzo's claim of retaliation against Sims. Cuozzo claims that Sims suspended his telephone privileges for 45 days on September 23, 2021, in retaliation for filing this lawsuit.

It is undisputed that Sims imposed a $15.00 institutional fine for both disciplinary charges for which Cuozzo was found guilty on May 7, 2021, and that she also imposed mandatory enhanced sanctions for the second of those two charges. Although the mandatory enhanced sanctions included no access to telephone calls for six months, Sims did not enforce that sanction at the time of Cuozzo's disciplinary sanction based on a memorandum issued by David Robinson.

As indicated above, on August 26, 2021, Robinson issued a revised memorandum reinstating the availability of telephone restrictions as a penalty for disciplinary offenses. Sims testified that the revised memorandum was the source of confusion in disciplinary cases involving mandatory penalties and that a meeting was held to provide clarification on how the memorandum applied in such cases. Sims credibly testified that she understood from the meeting that hearing officers were allowed to impose the remaining portion of a telephone restriction imposed as a mandatory enhanced sanction for a disciplinary offense. Following the meeting, on September 23, 2021, Sims submitted a form requesting that GTL suspend telephone privileges for Cuozzo and four other inmates. For Cuozzo, Sims indicated that the

suspension would begin on that date and end on November 7, 2021, six months after the date

of the conviction for which mandatory enhanced penalties were imposed.

Sims denied seeing or reading any documents copied by Cuozzo's counselor regarding

this lawsuit, and she denied reinstating Cuozzo's telephone restriction because of any lawsuit

filed against her. Even if Sims was somehow made aware of Cuozzo's litigation activity, the

court does not find it believable that such activity played a role in the decision to reinstate the

remaining portion of the six-month suspension of telephone privileges imposed as a

mandatory enhanced penalty in Case No. GROC-2020-2745. Instead, the court finds that Sims

treated other inmates in the same manner under similar circumstances and that she would have

reinstated the suspension of Cuozzo's telephone privileges even if Cuozzo had not filed this

lawsuit.

Based on the testimony and evidence presented at trial and the court's evaluation of

the credibility of the witnesses, the court makes the following findings of fact relevant to the

merits of Cuozzo's retaliation claim against Sims:

1.  Sims conducted hearings on each of the disciplinary offense reports issued
    against Cuozzo on May 7, 2021. Based on the evidence presented at the
    hearings, Sims found Cuozzo guilty of the offenses charged in Case Nos.
    GROC-2020-2744 and GROC-2020-2745.

2.  Sims imposed a fine for both charges for which Cuozzo was found guilty, and
    she imposed mandatory enhanced sanctions for the second of those charges.
    One of the mandatory enhanced sanctions—the suspension of telephone
    privileges for six months—was not enforced due to a memorandum issued by

David Robinson, which prohibited the imposition of telephone restrictions during the COVID-19 pandemic.

3. Robinson later issued a revised memorandum that rescinded the previous memorandum and permitted telephone restrictions to be imposed as a penalty for disciplinary offenses. Based on the revised memorandum and information provided during a meeting, Sims understood that hearing officers were allowed to impose the remaining portion of telephone restriction imposed as a mandatory enhanced sanction.

4. Given this understanding, Sims took steps to reinstate telephone restrictions that previously had not been enforced. On September 23, 2021, Sims requested that GTL suspend telephone privileges for five inmates, including Cuozzo. Sims specifically indicated that the suspension of Cuozzo's telephone privileges would expire on November 7, 2021, six months after the date of the conviction for which Sims imposed mandatory enhanced penalties.

5. Sims did not suspend Cuozzo's telephone privileges in retaliation for filing this lawsuit. Even if Sims was somehow aware of Cuozzo's litigation activity, the court finds that she would have taken the same action even if Cuozzo had not filed this lawsuit or engaged in other protected activity.

## V.    Conclusions of Law

Cuozzo filed suit against Warring and Sims under 42 U.S.C. § 1983, which "provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law." Filarksy v. Delia, 566 U.S. 377, 383 (2012) (internal quotation marks

omitted). Cuozzo claims that Warring and Sims retaliated against him for engaging in activity protected by the First Amendment.

"Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." ACLU v. Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). Although retaliation is not specifically referenced in the Constitution, it is "nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Id. As relevant here, prison officials may not retaliate against an inmate for exercising his First Amendment right of access to the courts. Hudspeth v. Figgins, 584 F.2d 1345, 1347–48 (4th Cir. 1978). Likewise, "inmates possess a First Amendment right to be free from retaliation for filing a grievance." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545–46 (4th Cir. 2017).

To prevail on a retaliation claim, a plaintiff must establish three elements: (1) that he engaged in protected activity; (2) that the defendant took an adverse action that would deter a person of ordinary firmness from exercising his rights; and (3) that there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020).

The first element is not disputed in this case; the defendants concede that Cuozzo engaged in protected activity by filing complaints, grievances, and this lawsuit. With regard to the second element, a plaintiff is required to show that a defendant's allegedly retaliatory conduct caused "more than a de minimis inconvenience" and that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal

quotation marks omitted). The alleged retaliatory actions in this case are the filing of disciplinary charges by Warring and the suspension of telephone privileges by Sims. The court will assume for purposes of this decision that both types of actions satisfy the second element and focus its attention on the third element.

The third element of a retaliation claim requires the plaintiff to show that "there was a causal relationship between his protected activity and the defendant's conduct." Martin, 977 F.3d at 299 (alterations omitted). The United States Court of Appeals for the Fourth Circuit has held that the causation element implicates "the burden-shifting framework of the same-decision test." Shaw v. Foreman, 59 F.4th 121, 130 (4th Cir. 2023) (citing Martin, 977 F.3d at 299). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." Id. (quoting Martin, 977 F.3d at 301). If the plaintiff meets that burden, the defendant may escape liability by proving "by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." Id.

In this case, Cuozzo presented no credible direct or circumstantial evidence that his protected activity was a substantial or motivating factor in Warring's decision to issue the four disciplinary offense reports against him on April 1, 2021. By that time, several months had passed since Cuozzo filed grievances and pursued criminal charges against Warring, and Warring denied being upset by any grievance or complaint that Cuozzo pursued against him. Although a causal connection may exist where a defendant takes adverse action against a plaintiff "shortly after learning of the protected activity," the passage of time generally "tends to negate the inference of causation." Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646,

656 (4th Cir. 2017) (internal quotation marks omitted). Additionally, the court has found that Warring relied on the SIU reports in issuing the disciplinary charges against Cuozzo, that Warring honestly and reasonably believed that the charges were supported by the information contained in the SIU reports, and that Warring would have taken the same actions even if Cuozzo had not filed grievances and complaints against him. Consequently, the retaliation claim against Warring fails on the causation element, and Warring is entitled to judgment in his favor.

The court reaches the same decision with respect to the claim of retaliation against Sims. Cuozzo did not present any evidence affirmatively establishing that Sims was aware of this lawsuit or any other protected activity at the time she reinstated his telephone restriction, and Sims denied reinstating the restriction because of any lawsuit. Additionally, the court has found that Sims would have taken the same action against Cuozzo even if she had been aware of this lawsuit or any other protected activity. This finding is supported by the fact that Sims took the same action against other inmates on the same date who, like Cuozzo, were subject to mandatory enhanced penalties for a disciplinary conviction. Thus, the retaliation claim against Sims fails on the causation element, and Sims is entitled to judgment in her favor.

## VI.    Conclusion

For the reasons stated, the court will enter judgment in favor of Warring and Sims on Cuozzo's claims of retaliation. To the extent Cuozzo's pretrial motion seeking to exclude defense witnesses remains pending, ECF No. 144, that motion will be denied.

An appropriate order and final judgment will be entered.

Entered: January 14, 2026

Michael F. Urbanski
U.S. District Judge
2026.01.14 16:59:52
-05'00'

Michael F. Urbanski
Senior United States District Judge